WILLIAM HAWARD *et al.*

*v.*

ANGENETTE J. PEAVEY.

*Filed at Ottawa May 16, 1889.*

1. WILLS—*equitable conversion—as, a change in the nature of property—real estate to personal, and personal estate to real.* An equitable conversion is defined to be that change in the nature of property by which, for certain purposes, real estate is considered as personal and personal estate as real, and transmissible and descendible as such. It is an application of the maxim, that equity regards that as done which ought to be done.

2. It is not essential that there should be an express declaration in the instrument that the land shall be treated as money although not sold, or that the money shall be treated as land although not actually laid out in the purchase of it. Such direction may arise, by necessary implication, from the nature of the instrument or the language employed.

3. There must, however, be an expression, in some form, of an absolute intention that the land shall be sold and turned into money, or that the money shall be expended in the purchase of land. The test is, has the will or deed absolutely directed that the conversion be made. In order to work a conversion while the property remains unchanged in form, there must be a clear and imperative direction to convert it.

4. If the act of converting is left to the option, discretion or choice of the trustees or others charged with making it, no equitable conversion will take place, because no duty to make the change rests upon them.

5. In this case, a testator devised all his estate after the payment of debts, etc., to his executors, in trust, for the support of his widow, and provided that on her death or marriage the executors should divide the property among his five children, or such of them as should then be living, or the lawful issue of such as might be dead. He also expressed a wish that the land be kept in the family, and authorized his executors to sell it to any of his sons at its full value, and provided that if any of his sons had any money advanced for them to begin with, the others should be made equal to them in the division: *Held,* that the executors were given a power of sale, the purchasers being limited to his sons, but that no imperative duty of sale was imposed, and hence there was no equitable conversion of the land into money. In such case, if no one of the sons was willing to purchase and pay the full value of the land, the power of sale could not be executed.

6. REMAINDER—*whether vested or contingent.* A remainder is vested when a present interest passes to a party to be enjoyed in the future, so that the estate is invariably in a determinate person after the particular intervening estate terminates; while a contingent remainder is one limited to take effect either to a dubious and uncertain person, or upon a dubious and uncertain event.

7. It does not follow, however, that every estate in remainder which is subject to a contingency or condition, is a contingent remainder. The condition may be precedent or subsequent. If the latter, the estate vests immediately, subject to being defeated by the happening of the condition, while in the former the remainder can not vest until that which is contingent has happened, and therefore become certain.

8. A testator devised all his estate to his executors, in trust, for the benefit of his widow for life, or until her marriage, with the remainder to such of his children as should be alive at the termination of the precedent estate, or to the lawful issue of such of them as might be dead leaving such issue: *Held,* that the estate devised to the sons was a contingent remainder, until the happening of the contingency that the persons who were to take the estate should be alive at the death or re-marriage of the widow. In such case, it makes no difference that the sons were named in the devise.

9. SALE ON EXECUTION—*contingent remainder.* A contingent remainder is not subject to sale on execution against the party entitled to the same.

APPEAL from the Circuit Court of La Salle county; the Hon. GEORGE W. STIPP, Judge, presiding.

This was a petition for partition, brought by Angenette J. Peavey, in which she claims title in fee to an undivided one-fourth of certain lands formerly owned by one James Haward. On the 16th day of April, 1866, said Haward died testate, being seized in fee at the time of his death of the lands described in the petition, and leaving him surviving Ellen Haward his widow, and William Haward, George Haward, Robert Haward, James Haward and Thomas Haward, his children and only heirs at law. His will, which was duly admitted to probate, was as follows:

"This is the last will of me, James Haward, farmer, of Eden Township, county of La Salle and State of Illinois, in manner following:

"First, I will and direct that all my just debts, funeral expenses and the costs of proving this my will, may be paid out of my personal estate as soon as convenient after my decease, and the rest and residue of my property, wheresoever situated and of what nature and kind soever, to be given in trust to my executors for the benefit and support of my wife Ellen, so long as she shall remain my widow and unmarried; that she and my two sons, James and Thomas, and also Robert, if they think best, may carry on my said farm or any part of it, also to send the said James and Thomas to school, one at a time, to improve their education; and if at any time my said wife and sons may wish to give up farming, it shall and may be lawful for my executors to sell all my personal estate to the highest bidder, and the proceeds thereof to be invested in some secure place, and the interest of said money and also the rent of my real property to be given to my wife to be used as aforesaid; but be it understood that my two old mares known by the names of Pigeon and Kitty shall not on any account be sold out of the family; if my said wife does not wish to keep them, any one of my sons may have them to keep, but if none of the family will keep them, my executors shall cause them to be destroyed and buried.

"On the death of my wife, or in the event of her marrying again, my executors shall then proceed to divide the property among my children. To my son William I give two hundred dollars as his share, as I think he is better provided for than any of the others, and the land I wish to be kept in the family, and the executors may sell it to any of the boys at its full value, and the proceeds of all my property, both real and personal, to be divided among my several children, William as above mentioned two hundred dollars, and the residue equally divided between such of my children, George, Robert, James and Thomas, as may be then alive, or the lawful issue of such of them as may be dead leaving lawful issue.

"And, lastly, I nominate and appoint my said wife Ellen executrix, and my sons William and Robert executors, of this my will, and that they be paid all reasonable expenses for their trouble in executing this my will, and if any of my sons have any money advanced for them to begin with, the others must be made equal to them in the division of the property."

Ellen Haward, the widow, remained unmarried until her death, which occurred July 26, 1886. On the 20th day of December, 1877, and during the lifetime of said widow, the petitioner recovered a judgment in the Circuit Court of the United States for the Northern District of Illinois against Robert Haward, one of the sons, for $963.16 and costs. On the 15th day of May, 1882, the interest of said Robert Haward in said land was sold on an *alias* execution issued on said judgment, the petitioner becoming the purchaser, and in due time a marshal's deed was executed to her, and under that deed she claims title in fee to an undivided one-fourth of said land. The widow lived upon and occupied said land until her death, and no part of it has ever been sold or conveyed by the executors. On the 5th day of March, 1878, James Haward conveyed his interest in said land to William Haward, and on the 8th day of the same month Robert Haward also conveyed his interest to William Haward. At some time prior to the hearing, the date not being shown by the record, Thomas Haward died intestate and without issue.

At the hearing the court found the petitioner to be the owner in fee of an undivided three-twelfths, William Haward of an undivided five-twelfths and George Haward of an undivided four-twelfths of said land, and a decree was entered accordingly. It being admitted by all the parties that said premises were so situated as not to be susceptible of division without manifest prejudice to the owners thereof, it was ordered that it be sold and the proceeds, after the payment of costs, be divided between the parties according to their respective interests

28—128 ILL.

as found by the decree.  William Haward and George Haward have thereupon appealed to this court.

Messrs. DUNCAN & GILBERT, for the appellants:

That a devise of real estate which is to be converted into money and the money distributed, is a devise of money and not of land, and that it can not be sold under execution against the devisee, has been repeatedly decided by this court.  *Baker* v. *Copenbarger,* 15 Ill. 103; *Jennings* v. *Smith,* 29 id. 116.

It is not essential, however, that the direction should be express in order to be imperative.  It may be necessarily implied.  Pomeroy's Eq. Jur. sec. 1160; Bispham's Eq. secs. 311, 312; *Wert's Exrs.* v. *Page,* 19 N. J. Eq. 365.

If there was no equitable conversion, the devise was not vested, but contingent, and the interest was not subject to levy and sale under execution.  Freeman on Executors, sec. 178; *Baker* v. *Copenbarger,* 15 Ill. 103; *McIlvaine* v. *Smith,* 42 Mo. 45; *Olney* v. *Hull,* 21 Pick. 311; *Nash* v. *Nash,* 12 Allen, 345; *Putnam* v. *Gleason,* 99 Mass. 454; *White* v. *Woodberry,* 9 Pick. 139; *Richardson* v. *Wheatland,* 7 Metc. 166; *People* v. *Jennings,* 44 Ill. 448.

Mr. L. LELAND, for the appellee:

That there was not an equitable conversion of the land into money, see Story's Eq. Jur. sec. 1214; Jarman on Wills, 483.

That the interest of Robert Haward was vested, and not contingent, see 4 Kent's Com. 203; 1 Jarman on Wills, 631, 632; *Railsback* v. *Lovejoy,* 116 Ill. 442; *Female Academy* v. *Sullivan,* id. 375; *Hurt* v. *McCartney,* 18 id. 129; *Loan Co.* v. *Bonner,* 75 id. 316; *Lunt* v. *Lunt,* 108 id. 307; *Schofield* v. *Olcott,* 120 id. 362.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

The petitioner in this case claims title in fee to an undivided one-fourth of the land in question by virtue of the sale under

execution of Robert Haward's interest therein, and the decree can be sustained only upon the theory that at the time of the levy and sale, Robert Haward was the owner of an estate in said land subject to execution. The appellants insist that Robert Haward at that time had no vested interest in the land, and in support of their contention they submit two propositions, viz.: First. That by the will of James Haward, deceased, said land was directed to be converted into money and the money divided among his sons, thus working an equitable conversion of the land, *eo instanti,* upon the death of the testator. Second. If there was no conversion, the interest given to Robert Haward by the will of his father was not a vested but a contingent remainder, and that such remainder did not become vested until after said levy and sale. It must be admitted that if either of these propositions can be sustained, the sale under the execution was nugatory, and vested no title in the purchaser.

Did the will of James Haward operate as an equitable conversion of said land? Conversion has been defined to be, that change in the nature of property by which, for certain purposes, real estate is considered as personal, and personal estate as real, and transmissible and descendible as such. It is an application of the maxim that equity regards that as done which ought to be done. It is not essential that there should be an express declaration in the instrument that the land shall be treated as money, although not sold, or that the money shall be treated as land although not actually laid out in the purchase of it. Such direction may arise by necessary implication from the nature of the instrument or the language employed. But there must be an expression, in some form, of an absolute intention that the land *shall* be sold and turned into money, or that the money *shall* be expended in the purchase of land. The test is, has the will or deed absolutely directed that the conversion be made? In order to work a conversion while the property remains unchanged in form,

there must be a clear and imperative direction to convert it. If the act of converting is left to the option, discretion or choice of the trustees or others charged with making it, no equitable conversion will take place, because no *duty* to make the change rests upon them. 3 Pomeroy's Eq. Jur. sec. 1159 *et seq.* and authorities cited. In *Anewalt's Appeal,* 42 Pa. St. 414, the court lays down the rule, in language quoted from the standard authorities, as follows : "To establish a conversion, the will must direct it absolutely or out and out, irrespective of all contingencies. The direction to convert must be positive and explicit, and the will, if it be a will, or the deed, if it be by contract, must decisively fix upon the land the quality of money. It must be an imperative direction to sell."

Does the will of James Haward contain an absolute direction, either in express terms or by implication, to convert the land of the testator into money and distribute it among his sons in that form, so as to leave to his executors no discretion on that subject? Said will assumes to deal with both real and personal estate, and as we have no information on the subject outside of the will, we may assume that the testator, at the time of his death, was the owner of personal as well as real property. The will gives all his property, both real and personal, to his executors, in trust for the benefit and support of the testator's wife so long as she should remain his widow, and it was provided that the widow and certain of the sons might, if they thought best, carry on the farm or a part of it, or if they wished to give up farming, the executors were authorized to sell his personal property and invest the proceeds, and rent the land, paying to the widow the rent and the interest on the money invested. The direction to convert the land into money, if it exists at all, must be found in the following clause of the will :

"On the death of my wife, or in the event of her marrying again, my executors shall then proceed to divide the property among my children. To my son William I give two hundred

dollars as his share, as I think he is better provided for than the others, and the land I wish kept in the family, and my executors may sell it to any of the boys at its full value, and the proceeds of my property, both real and personal, to be divided among my children, William, as above mentioned, two hundred dollars, and the residue equally divided between such of my children, George, Robert, James and Thomas, as may be alive, or the lawful issue of such of them as may be dead leaving lawful issue."

By this clause the executors were clearly given a power of sale, the persons who might become purchasers being limited, however, to the testator's sons, the reason of such limitation being the testator's desire to keep the land in the family. But we fail to find any provision which, either expressly or by implication, made it imperative that the executors should exercise that power. Said clause first provides in terms for a division of the property among the testator's sons upon the termination of the widow's equitable estate. That provision standing alone would have made it imperative upon the executors to divide the property as it stood without a sale. But it being the testator's desire that his land should remain in his family, he provided further, that his executors might sell the land to one of his sons, if any one of them was willing to buy and pay its full value, and make distribution by dividing the proceeds. It seems clear that the power of sale was given as an alternative and not as the exclusive mode of making division of the property. The testator's wish that the land should be kept in the family seems to have furnished a governing principle in drafting the will, and that wish would be equally well accomplished by dividing the land itself among his sons, or by selling it to one of them and dividing the proceeds.

It should also be observed that the language of the will does not require the land to be sold, but only provides that it may be sold, and in case of sale the possible purchasers were limited to five persons. Because of such limitation it became

necessary to provide that the purchaser should pay the full value of the land, for otherwise it might be sacrificed by reason of a lack of competition. It would have been repugnant to the very purpose for which a sale was permitted to allow the land to be sold to a stranger, as that would manifestly have taken it out of the family. If no one of the sons therefore had been willing to purchase and pay its full value, the power of sale could not have been executed. In that case the only division possible would have been a division of the land.

An argument is sought to be based upon the following phrase of the clause of the will above quoted, viz., "the *proceeds* of all my property, both real and personal, to be divided among my several children," etc. That language is a part of the provision permitting a sale, and its force is merely that, in case of a sale, the proceeds should be divided. It clearly was not intended to apply to the division in case the land itself should be divided.

Nor can we perceive any special significance, as bearing upon the question under consideration, of the last clause of the will which provided that, "if any of my sons have any money advanced for them to begin with, the others must be made equal to them at the division of the property." It is not claimed that any such advances had been made by the testator in his lifetime, and the language here quoted must be deemed to have reference to possible advances made to the sons by the executors, or it may be by the widow, out of the personal estate, during the lifetime of the widow. We are unable to see how an adjustment of such advances was not quite as practicable under one mode of division as under the other. Even if there was not sufficient personal estate for the purposes of such adjustment, and it is not shown that there was not, the necessity of making it would interpose no obstacle to the division of the land without a sale.

We are of the opinion that there was no absolute requirement in the will that the land should be sold, but that the

sale was left to the discretion of the executors, and as no sale was actually made under the power, there was no equitable conversion of the land.

The lands of James Haward, deceased, being devised to his executors to be held in trust for his widow during widowhood, and then to be divided among his children, the four sons specially named in the will took only an estate in remainder, and the material question here is, whether the remainder devised to his son Robert was, at the time of the execution sale, vested or contingent. The proposition is not controverted that if it was merely contingent, it was not subject to sale on execution. This proposition seems to be supported by the following authorities: *Watson* v. *Dodd*, 68 N. C. 530; *Jackson* v. *Middleton*, 52 Barb. 9; *Baker* v. *Copenbarger*, 15 Ill. 103; Freeman on Executions, sec. 178.

The will provides that, upon the death or re-marriage of the widow, the executors shall proceed to divide the estate of the testator among his children, but in fixing the mode in which the division shall be made, it provides that William shall be given two hundred dollars in money as his share, "and the residue equally divided between such of my children, George, Robert, James and Thomas, as may be then alive or the lawful issue of such of them as may be dead leaving lawful issue."

A remainder is said to be vested where a present interest passes to a party, to be enjoyed in the future, so that the estate is invariably fixed in a determinate person after the particular estate terminates; while a contingent remainder is one limited to take effect, either to a dubious and uncertain person, or upon a dubious and uncertain event. 2 Black. Com. 168. This definition is adopted, in substance, by all the text writers, and is sufficiently accurate. But it does not necessarily follow that every estate in remainder which is subject to a contingency or condition is a contingent remainder. The condition may be precedent or subsequent. If the former, the remainder can not vest until that which is contingent has

happened and thereby become certain.   If the latter, the estate vests immediately, subject to be defeated by the happening of the condition.   *Bromfield* v. *Crowder,* 1 Bos. & Pul. 313 ; *Blanchard* v. *Blanchard,* 1 Allen, 223 ; *Manice* v. *Manice,* 43 N. Y. 380 ; Washburn on Real Property, (4th ed.) 579.   It is plain that in the present case the estate devised was, so far as Robert Haward was concerned, subject to a contingency, viz., his being alive at the time the particular estate should be determined by the death or re-marriage of the widow.   Whether this contingency constituted a condition precedent or subsequent must be determined by the language of the will.

While the proper construction of the will is not a matter wholly free from doubt, it seems to be clear that the intention of the testator was not to devise to his son Robert a present estate subject to be defeated in case of his death before the termination of the particular estate, but to make the estate itself conditional upon his being alive at that time.   The devise was not to him, nor to him and his three brothers, but only to such of the four as should be alive at the death or re-marriage of the widow.   If one or more of the sons named had died before the death of the widow, it would have been doing violence to the language of the will to hold that any estate was thereby vested in them.   They would have been excluded by the very terms of the will from the number of those named as beneficiaries.   The persons to whom the estate would go being wholly uncertain during the continuance of the particular estate, it must be held that the contingency named, viz., that the persons who were to take the estate should be alive at the death or re-marriage of the widow, was a condition precedent to the vesting of the estate, and that until the condition happened the estate was necessarily contingent.

The cases to be found in the reports, so far as they can aid us in the interpretation of the will under consideration, seem to support the view we have here expressed.   In *Olney* v. *Hull,* 21 Pick. 311, the testator, after devising to his wife the use

of his real estate while she remained his widow, proceeded as follows: "Should my wife marry or die, the land shall then be equally divided among my surviving sons, with each son paying $60 to my daughters, to be equally divided among them, as soon as each son may come into possession of said land." It was held that until the death or marriage of the widow it was uncertain who would be alive to take, and therefore, that no estate vested in any one before that event happened.

In *Nash* v. *Nash,* 12 Allen, 345, the testator devised the use of his real estate to his wife during life, and at her death the fee to such of his children as might be then living, share and share alike, and it was held that, during the life of the widow, the estates given to the children were contingent and not vested.

In *Thomson* v. *Ludington,* 104 Mass. 193, the testator gave his estate to his widow during life or widowhood, and directed that at her decease or marriage, the estate should be divided "equally to and among such of my children as shall then be living, share and share alike; the names of my said children are George C., Ann L., Lucy M., Francis H. and Caroline E., to them and to their heirs and assigns forever." It was there held that the will gave only a contingent remainder to such of the children as should happen to be living when the contingency of such death or marriage happened.

The case of *Blanchard* v. *Blanchard,* 1 Allen, 223, may be referred to as a fair illustration of a vested remainder, liable to be divested by the happening of a condition subsequent. There the testator devised to his wife all the income of all his real and personal property, and then devised as follows: "I give and bequeath to my beloved daughter Elizabeth Ford Blanchard, to my daughter Mary Jane Blanchard, to my daughter Anna Dawson Morrison Blanchard, to my son Henry Blanchard, and my son Samuel Orne Blanchard, all the property both real and personal that may be left at the death of my wife, to be divided equally between the five last named

children. And provided, furthermore, that if any of the last five named children die before my wife, then the property to be equally divided between the survivors, except they should leave issue, in that case to go to said issue, provided the said issue be legitimate." The testator had ten children, all of whom survived the wife. The court held that the portion of the clause above quoted preceding the proviso presented the ordinary case of a devise to the wife for life, remainder in fee at her death to five of her children, to be equally divided between them. There being in that portion of the devise no words of contingency, such as "if they shall be living at her death," or "to such of them as shall be living," the usual and proper phrases to constitute a condition precedent, a vested remainder was created in the children named as tenants in common. In construing the proviso, it was admitted that, if its effect was to limit the remainder to such of the children named as should survive their mother, the remainder would be contingent, but it was held, after a full review of the authorities, that the proviso merely introduced into the devise a condition subsequent, and that the remainder was vested, subject to be divested upon the happening of the condition.

The foregoing cases sufficiently illustrate the principles upon which the will in this case must be construed. The devise was to such of four persons as should be alive at the termination of the particular estate. Until that time arrived it could not be told who were to be the beneficiaries of the devise. Until that time the persons to take were not and could not be identified, and until that time it was wholly uncertain whether Robert Haward was one of them or not. It follows that, at the time the land in question was sold under execution, Robert Haward's interest was only a contingent remainder, which was not subject to levy and sale, and that no title therefore passed to the purchaser by the marshal's deed.

An attempt is made to distinguish this case from the cases above cited upon the fact that in this case the four possible

beneficiaries of the devise were mentioned by name, while in the cases cited, or in most of them, the devise was to the children who should be alive at the termination of the particular estate, as a class. Even that distinction does not exist between this case and *Thomson* v. *Ludington,* as there the children were all mentioned by name, and it is not even suggested there that that fact made any difference with their rights. But we are unable to see how there can be any greater degree of certainty in the designation of the beneficiaries where all the persons in the class are mentioned by name, than where they are simply designated as a class, so long as the devise is only to such of the persons named, or of the class, as may be alive at the expiration of the life estate. The contingency grows out of the use of the words, "to such of them as shall be living," which, as said in *Blanchard* v. *Blanchard,* is a proper phrase to constitute a condition precedent.

The decree of the court below finding that the petitioner is the owner in fee of an undivided one-fourth of the lands sought to be partitioned is unsupported by the evidence. The decree will therefore be reversed and the cause remanded.

*Decree reversed.*