[Civ. No. 630.   Third Appellate District.—November 13, 1909.]

In the Matter of the Estate of ALBERT HENRY WASH-
    BURN, Deceased.  JEANIE W. HIGGINS, Guardian
    of HENRIETTA HIGGINS and CHARLES HIGGINS,
    Minors, Appellant, v. E. P. WASHBURN, J. S. WASH-
    BURN and J. B. COOK, Trustees Under Will of Said
    Deceased, Respondents.

WILLS—DEVISE IN TRUST—INCOME DURING LIVES OF WIDOW AND
    DAUGHTER—CONTINGENT REMAINDER TO SURVIVING CHILDREN AND
    GRANDCHILDREN.—Where a will devised property to trustees in trust
    to pay the income to the surviving widow of the testator, and to
    his married daughter, and to the survivor of them during life, and
    devised the remainder upon the termination of the trust to the
    then living children of the married daughter, or her then living
    grandchildren by right of representation, such devise of the re-
    mainder is of a contingent remainder, which does not vest in any
    child or grandchild of the daughter until her death.

ID.—UNCERTAINTY OF RIGHT OF ENJOYMENT.—It is the uncertainty of
    the right of enjoyment, and not the mere uncertainty of the actual
    enjoyment, that makes such remainder contingent.  The uncer-
    tainty of any of the children of the married daughter surviving
    her renders the interest of any of them contingent.

ID.—DISTINCTION BETWEEN VESTED AND CONTINGENT REMAINDERS.—
    A remainder is vested, when there is some person *in esse* known and
    ascertained, who by the instrument creating the estate is to take
    and enjoy the estate upon the expiration of the existing particu-
    lar estate, and whose right to such remainder no contingency can
    defeat; but the remainder is contingent, when it depends upon the
    happening of a contingent event, whether the estate limited as a
    remainder shall ever take effect at all.

ID.—VESTED AND CONTINGENT GIFTS TO CLASS OF PERSONS.—If there
    are words of present gift to a class of persons in existence, in
    remainder, the remainder is vested, though it cannot be ascertained
    until the determination of the particular estate who will ulti-
    mately take; but if futurity attaches to the gift, so that it is not
    intended to take effect until the determination of the particular
    estate, the remainder to a class of persons then existing is contin-
    gent.

ID.—PREFERENCE OF VESTED REMAINDER—LANGUAGE OF WILL CONTROL-
    LING.—Although the law prefers to consider future estates as
    vested, yet it also seeks to effectuate the will of a testator, and
    if the language used shows his intention not to create a vested

estate, but expresses a contingency as to who shall take, the language of the testator must control.

ID.—FAIR CONSTRUCTION OF WILL SHOWING CONTINGENT REMAINDER.
Giving a fair construction to the will, and yielding to the intention of the testator, it is concluded that the remainder is contingent, and will only accrue to such children of the married daughter as may be living at the time of her death.

ID.—CONVEYANCE OF LIFE ESTATE TO CHILDREN IN ESSE—MERGER NOT DISCHARGING TRUST.—A conveyance of the whole surviving life estate vested in the surviving married daughter to her children *in esse* does not create a merger discharging the trust, which must be vested in the trustees until her death, notwithstanding such conveyance.

ID.—CONDITIONS OF MERGER NONEXISTENT.—The whole legal and equitable title must exist in the same person to constitute a merger of a life estate in the fee. The legal title being in the trustees, and the children *in esse* having no existent legal estate, there could be no merger of the life estate in the fee. There can be no merger where a life estate and a contingent estate are united.

ID.—RULE IN EQUITY.—Wherever it would work injustice or defeat the intention of the donor to work a merger, the two estates will be kept alive, although they come together in one person. While merger at law follows immediately upon the union of a greater and lesser estate in the same ownership, it does not so follow in equity. There the doctrine is not favored, and the estates will be kept separate where the intention of the parties and justice require it.

ID.—MANIFEST INTENTION OF TESTATOR TO PRESERVE TRUST REGARDLESS OF CONTINGENT REMAINDER.—Even if it be conceded that the remainder was vested and not contingent, it is held that it was the manifest intention of the testator that the trust should be kept alive for the benefit of all parties concerned, and safely transmitted to the remaindermen, consisting not only of the children *in esse*, but all who should become the future issue of the married daughter, during her coverture, and to be transmitted to them upon her death.

ID.—TRUST IN FAVOR OF ALL ISSUE.—Where a trust is in favor of the children now living, or that may hereafter be born of certain parents, the trustees will retain the title so long as there is a possibility of issue, which, in the eye of the law, continues as long as the woman lives or coverture exists.

APPEAL from a decree of the Superior Court of Mariposa County distributing the estate of a deceased person. J. J. Trabucco, Judge.

The facts are stated in the opinion of the court.

Everett Ball, and John M. Corcoran, for Appellant.

Wilson & Wilson, for Respondents.

CHIPMAN, P. J.—Petition for final distribution of the estate of deceased. After making certain bequests of money, which have been paid, the will of deceased provides as follows:

## "II.

"All the rest, residue and remainder of my Estate, of every kind and character, and wheresoever situated, of which I may die seized and possessed, I give, devise and bequeath to my brothers, Edward P. Washburn and John H. Washburn, of Wawona, and to Jay B. Cook of Yosemite Valley; in trust, however, to hold, manage and control, and to invest and reinvest the same in such manner as in their judgment may seem best, and to pay over to my beloved wife Jean Bruce Washburn for and during the term of her natural life one half of the entire net income arising therefrom, in monthly installments; and to pay over the other one-half of said net income in monthly installments to my daughter Jeanne Washburn Higgins, wife of C. C. Higgins for and during the term of her natural life.

"Upon the death of either my said wife or my said daughter the one-half of the income to which the one so dying was entitled shall be paid to the survivor until her death.

"Upon the death of such survivor this trust shall cease and determine and all of said property so held in trust, together with all accumulations thereon and thereof, shall vest in and belong to Henrietta Higgins and Charles Higgins, the children of my said daughter, and such other children as may be born to her, or in such of them as shall then be living, share and share alike, the children of any deceased child, if such there be, to take by right of representation.

## "III.

"I hereby appoint my said brothers Edward P. Washburn and John S. Washburn and my friend Jay B. Cook, to be the Executors of this my last Will and Testament, and I direct that no bond or other security be required of them or either of them at any time for the faithful performance of their duties as such Executors or as such Trustees.

11 Cal. App.—47

"I hereby authorize and empower my said Executors to lease or sell any of the property of my Estate at public or private sale and with or without notice, and without the previous or any order of any court."

It appears from the findings of the court that the estate is in condition to be closed; all the property was community property, to one-half of which Jean B. Washburn became entitled on the death of deceased; since his death his wife died, but prior thereto she conveyed all her interest in the estate to her daughter, Jeanie W. Higgins, and except as to her interest in certain shares of the capital stock of the Yosemite Stage and Turnpike Company (2,662½ shares) the one-half of said property to which the widow was entitled has been distributed as required by law; Henrietta and Charles Higgins, mentioned in said will, are minors and children of the said Jeanie, but their age does not appear, and she has been appointed and is the duly qualified and acting guardian of their estates and they are her only children; prior to filing the petition herein the said Jeanie conveyed and relinquished to her said children, Henrietta and Charles, "all the rights and interests to which she was entitled under the will of said decedent by an instrument in writing" (which is set forth in the findings); the residue of said estate of decedent consists of 5,325 shares of the Yosemite Stage and Turnpike Company and 25,000 shares of the Wawona Hotel Company. Jeanie W. Higgins is the wife of C. C. Higgins, now living. In its conclusions of law the court found that the said Jeanie W. Higgins, as grantee of her mother, is entitled to have distributed to her one-half of the stage company stock (2,662½ shares), and that the trustees under the will are entitled to have distributed to them, in trust, all the remaining property of decedent, "to hold, manage and control the same in such manner as in their judgment may seem best, and to pay over to the said Henrietta W. Higgins and Charles Higgins, for and during the term of the natural life of said Jeanie W. Higgins, and until her death, the entire net income arising from said property, in monthly installments," and upon the death of the said Jeanie the said trust shall cease, and all of said property so held in trust, and its accumulations, shall vest in and belong to said Henrietta and Charles Higgins, children of said Jeanie, "and such other children as may be

born to the said Jeanie W. Higgins, or in such of them as shall then be living, share and share alike, the children of any deceased child, if such there be, to take by right of representation." Decree was entered accordingly.

The appeal is by the plaintiff from that portion of said decree of final distribution as distributes to the trustees the property described and refusing to distribute said property as prayed for in said petition—namely, that all the property except one-half of the stage company stock be distributed to Henrietta and Charles Higgins. Briefly stated, the position of appellant is: That the widow of deceased being dead, Mrs. Higgins, as sole survivor of the life estate, became the sole beneficiary of the trust, and that when she conveyed that interest to Henrietta and Charles, her only children *in esse,* they became vested with the entire fee; that the object of the trust was solely to collect and pay over to Mrs. Higgins the net income of the property during her life, and as she had conveyed this interest to her two children, she had no further interest in the estate, and the object of the trust ceased; that when the vested interest in remainder and the intermediate and precedent estate of their mother was centered in the children, the precedent estate was merged in the greater vested estate in remainder in fee, and the children became vested with the entire title in fee and hence there is nothing to which the trust can attach; that thereupon it became the duty of the court to distribute the estate to the persons entitled by law, namely, to the two children, Henrietta and Charles, subject to open and let in any after born children, if any.

1. It is important, in some aspects of the case, to discover what interest these children, born and unborn, take under the will and when it vests. Future interests are vested or contingent. (Civ. Code, sec. 693.) "A future interest is vested when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property, upon the ceasing of the intermediate or precedent estate." (Civ. Code, sec. 694.) "A future interest is contingent, whilst the person in whom, or the event upon which, it is limited to take effect remains uncertain." (Civ. Code, sec. 695.)

There is no subject of the law more abstruse or in which greater refinement of learning has been displayed than that of remainders. No definitions ever have been or ever will be given which will relieve all cases from doubt. Mr. Kent commends Mr. Blackstone's treatment as far surpassing all others for its "perspicuity, simplicity, comprehension, compactness, exactness, accuracy and admirable precision." And yet he adds: "I have read the chapter frequently but never without a mixture of delight and despair." (4 Kent's Commentaries, 208, note, 14th ed., by Mr. Gould.)

Unquestionably, the interest of the unborn children is contingent, because it is uncertain whether they will ever come into existence, and should this happen, there is the still further contingency upon which the taking by them of any interest would depend—namely, that the life tenant be then living. The interest of Henrietta and Charles is not so plainly apparent. The broad distinction between vested and contingent remainders is this: In the first, there is some person *in esse* known and ascertained, who, by the will or deed creating the estate, is to take and enjoy the estate upon the expiration of the existing particular estate, and whose *right* to such remainder no contingency can defeat. In the second, it depends upon the happening of a contingent event whether the estate limited as a remainder shall ever take effect at all. It may never happen, or it may not happen until after the particular estate upon which it depends shall have been terminated, so that the estate in remainder will never take effect. (2 Washburn on Real Property, sec. 1332.)

Speaking of the New York statute, which is the same as ours, it was held in the case *In re Hoadley,* 101 Fed. 233, that if there are words of *present gift* to a class of persons in existence, the remainder is vested, though it cannot be ascertained until the determination of the particular estate which, if any, members of the class will ultimately take; but if futurity attaches to the gift so that it is not intended to take effect until the determination of the particular estate, the remainder is contingent.

The existence of a contingency, irrespective of the duration of the remainder, on which contingency possession or enjoyment depends, is the fundamental characteristic of a contingent remainder and forms a true, tangible and practical

criterion by which the contingent character of a remainder is limited on an uncertain event, that is, an event which may never happen, or on an event which may not happen till after the determination of the particular estate, though it is certain to happen at some time, or when the remainder is limited to a person not in being or not ascertained. (24 Am. & Eng. Ency. of Law, p. 400.)

The law prefers to consider future estates as vested, but the law also seeks to effectuate the wishes of the testator, and when his desire is clearly expressed, as we think it is here, it should be carried out, regardless of the conventional distinctions made between vested and contingent remainders, for this is the paramount duty of the court. "The will may disclose an intent not to give a vested interest. This is effected by words of contingency as to the person who shall take, e. g., a devise to A, remainder to his children living at the time of his death." (24 Am. & Eng. Ency. of Law, 2d ed., p. 383.) In all cases it is the intention, expressed in the instrument creating the expectant estate, that is to govern, and, therefore, if the language employed shows an intention to postpone the vesting until the happening of a certain event, it is contingent. (24 Am. & Eng. Ency. of Law, 2d ed., p. 392, and cases noted.)

The present capacity to take in possession is not a universal test. Thus, if land be given to A for life and in case B survives A then to B in fee simple, the remainder to B is contingent, because it depends upon an uncertain event, namely, the death of A in the lifetime of B; but all the while that A and B are both alive, B's remainder has a present capacity to take effect in possession should the possession become vacant by the death of A. (24 Am. & Eng. Ency. of Law, 388.) Numerous instances of contingent remainders of this sort are cited in the notes.

The true criterion of a vested remainder is the existence in an ascertained person of a *present fixed right* of future enjoyment of the estate limited in remainder, which right will take effect in possession immediately on the determination of the precedent estate, irrespective of any collateral event, provided the estate in remainder does not determine before the precedent estate. (24 Am. & Eng. Ency. of Law, 2d ed., p. 389.)

The will here provides that "upon the death of such survivor this trust shall cease and determine, and all of said property . . . shall vest in and belong to Henrietta Higgins and Charles Higgins, the children of my said daughter, and such other children as may be born to her, *or in such of them as shall then be living.*" This latter clause refers to all of the class—Henrietta and Charles and any other children born to their mother—and the property is to vest "in such of them as shall *then* be living," i. e., "upon the death of such survivor."

By express terms the trust was to continue until the death of Mrs. Higgins, and that was the precise event upon the happening of which the title was to vest in the children living at the death of the testator or "such other children as may be born to her," Mrs. Higgins. It seems to us that nothing is lacking to make entirely clear the intention that the children living at the death of the life tenant or "the children of any deceased child" then living, were to take, and this could be known only when the contingent event happened. It is the uncertainty of the *right* of enjoyment, and not the uncertainty of its actual enjoyment, that renders the remainder contingent. (4 Kent's Commentaries, 202-206.) The uncertainty of any of the children of the class surviving Mrs. Higgins renders the interest of any such contingent.

A few cases may be cited as illustrative of the principles we have endeavored to point out.

In *Hayward* v. *Peavey,* 128 Ill. 430, [15 Am. St. Rep. 120, 21 N. E. 503], the will devised the estate to the testator's executors to be held in trust for his widow during widowhood, and upon the death or remarriage of the widow, the executors were to proceed to divide the remainder among his children specially named, "as may then be alive, or the lawful issue of such of them as may be dead leaving lawful issue." The interest of one of the sons was sold under execution, and it was conceded that if this interest was merely contingent the purchaser took nothing, but otherwise if vested. The court said: "A remainder is said to be vested when a present interest passes to a party, to be enjoyed in the future, so that the estate is invariably fixed in a determinate person after the particular estate terminates; while a contingent remainder is one limited to take effect, either to a dubious and

uncertain person, or upon a dubious and uncertain event.
(2 Blackstone's Commentaries, 168.) . . . But it does not
necessarily follow that every estate in remainder which is
subject to a contingency or condition is a contingent re-
mainder.   The condition may be precedent or subsequent.   If
the former, the remainder cannot vest until that which is con-
tingent has happened, and thereby become certain.   If the
latter, the estate vests immediately, subject to be defeated by
the happening of the condition.   (Citing cases.)   It is plain
that, in the present case, the estate devised, so far as Robert
Hayward was concerned (the son above referred to), was
subject to a contingency, viz., his being alive at the time the
particular estate should be determined by the death or remar-
riage of the widow.   Whether this contingency constituted a
condition precedent or subsequent must be determined by the
language of the will.   It seems to be clear, though not wholly
free from doubt, that the intention was not to devise to his
son Robert a present estate subject to be defeated in case of
his death before the termination of the particular estate, but
to make the estate itself conditional upon his being alive at
that time.''   In support of the opinion the following cases
were cited as instances where the remainder was contingent:
*Olney* v. *Hull,* 21 Pick. 311, where the words were: . . .
''the land shall then be equally divided among my sons'';
*Nash* v. *Nash,* 12 Allen, 345, the language was . . . ''at her
death to such of his children as might then be living.''   In
*Thompson* v. *Ludington,* 104 Mass. 193, the provision was: To
the widow during life or widowhood, and directed that at her
death or marriage the estate should be divided ''equally to
and among such of my children as shall then be living.''   The
distinction made between a remainder subject to a condition
precedent and a condition subsequent is well shown in
*Blanchard* v. *Blanchard,* 1 Allen, 223, and in that case the
court said: ''There being in that portion of the devise no
words of contingency, such as 'if they shall be living at her
death,' or 'to such of them as shall be living,' the usual and
proper phrases to constitute a condition precedent, a vested
remainder in fee was created.''

In the recent case of *Golladay* v. *Knock,* 235 Ill. 412, [126
Am. St. Rep. 224, 85 N. E. 649], the will devised the testator's
property to his wife, Nancy Golladay, ''and to her children

after her death; . . . and if the said Nancy Golladay does not have children that will live to inherit said real estate, that the said real estate, at the death of Nancy Golladay and her children, fall to Moses Golladay and his heirs of said county." The court held, as in *Hayward* v. *Peavey*, 128 Ill. 430, [15 Am. St. Rep. 120, 21 N. E. 503], that the devise over to Moses Golladay could not be construed as vesting a present interest in fee, subject to be devested upon the death of the life tenant leaving children surviving her. Said the court: "The clearly expressed intention of the testator was to give his wife a life estate in the premises, with remainder in fee to such of her children as might be living at the time of her death; then, to meet the possibility that his wife might die leaving no children surviving her, he made the devise over to Moses Golladay and his heirs. Here the devise depended upon a dubious and uncertain contingency—that is, the death of the life tenant without leaving children surviving her."

In *United States Trust Co.* v. *Roche*, 116 N. Y. 120, [22 N. E. 265], by a trust deed a life estate was given to Anna S. Stagg, remainder to her children living at the time of her death. In an action to foreclose a mortgage during the life of Anna it was held that her children were not necessary parties. The court said: "No legal estate in remainder, vested or contingent, was created by the deed of trust, but the entire legal estate was vested in the trustee, where it now remains, and James C. Foster (child of Anna) has no legal estate of any kind to protect. . . . James C. Foster has not a vested interest in the subject of the trust, nor its avails. His interest is contingent upon his surviving his mother."

In *Smith* v. *Edwards*, 88 N. Y. 103, certain property was to be distributed at the time of the marriage or majority of the youngest grandchild who "may then be living." The court discussed at some length the question as to the time the interest vested. The court said: "The condition of survival attached to the gift itself; who the legatees would in fact prove to be dependent upon a future contingency. Those who were to take in the prescribed event were uncertain until it happened; might not be any of those *in esse* at testator's death, and might prove to be a grandchild born twenty years later."

In *Everitt* v. *Everitt*, 29 N. Y. 75, the court said: "The leading inquiry upon which the question of vesting or not vesting turns is whether the gift is immediate, and the time of payment, or of enjoyment only postponed, or is future and contingent, depending upon the beneficiary arriving of age or surviving some other person, or the like. If *futurity* is annexed to the *substance* of the gift, the vesting is suspended; but if it appear to relate to the time of payment only, the legacy vests instanter."

For the rule in England, see chapter 2, 2 Redfield on Wills, second edition, 213. This author says: "Where a gift over is made to take effect in favor of a class, it is in general held that the gift in remainder is contingent, as to the individual devisees, since the persons composing the class are not to be ascertained until the period of the determination of the intervening estate, and there could be no vesting until the devisees are ascertained." (Id., p. 239.) While in many cases this, as all other rules, are made to bend to circumstances, it is everywhere held that it is competent for the testator in terms to direct whether the estate shall vest or not, and where this is done all construction is excluded. (Id., p. 244.)

Giving a fair construction to the will and yielding to the apparent intention of the testator, we reach the conclusion that the remainder is contingent and will go to such of the class only as may be living at the death of Mrs. Higgins.

We might, perhaps, have rested the question with the decision in the case of *In re Winter*, 114 Cal. 186, [45 Pac. 1063], had we not thought it best to again examine the matter. In that case the will bequeathed to the testator's wife all of his estate except a certain ranch, which latter he bequeathed to her "for the remainder of her life; then it is to be sold and the proceeds divided between my surviving brothers and sisters." It was held that "it was reasonably clear the intention of the testator was to bequeath the money proceeds of the ranch to those brothers and sisters living at the time appointed in the will for the distribution of the money."

2. Appellant's further contention is that the children named not only took a vested remainder, but that when the lesser estate, i. e., the life estate, was conveyed to them it

became merged in the greater estate, i. e., the remainder; that the trust was thus terminated and immediately they were entitled to the fee absolute. Considered as a contingent remainder, however, there could be no merger, for the fee is in the trustees. The definition of a merger precludes the possibility of its happening where a life estate and a contingent estate only are united. The whole title, legal as well as equitable, must unite in one and the same person. Where the two thus meet, without any intermediate estate, the less is immediately annihilated, or, in law phrase, "merged." (Anderson's Dictionary; 2 Blackstone's Commentaries, 397; 1 Kent's Commentaries, 265.) The merger here claimed is of interests in personal property, and, if the doctrine of merger may apply in such case, which is certainly unusual, the same principles would apply as in cases of real estate, we should think.

Where a trust has once been created in respect of real estate, it attaches to and binds itself upon the estate, and can never be detached from it, or extinguished, except by a union of the legal and equitable estates in one person; the equitable, in such case, being merged in the legal estate. (2 Washburn on Real Property, sec. 1469.)

To have the union operate a merger, the estates must unite in one and the same person, having a commensurate and coextensive interest in each, with no intervening interest in another. A legal estate in fee in one who has only a partial equitable interest, or *vice versa*, would not merge. (Id., sec. 1484.) Wherever it would work injustice, or defeat the intention of the donor to work a merger, the two estates will be kept alive although they come together in one person. (Id., sec. 1486.) While merger at law follows immediately upon the union of a greater and lesser estate in the same ownership, it does not so follow in equity. There the doctrine is not favored and the estates will be kept separate where the intention of the parties and justice require it. (*Smith* v. *Roberts*, 91 N. Y. 475.)

The court said, in *Pryor* v. *Winter*, 147 Cal. 554, [109 Am. St. Rep. 162, 82 Pac. 202]: "Section 741 of the Civil Code expressly declares—what was always the law—that 'no future interest can be defeated or barred by any alienation or other act of the owner of the intermediate or particular interest.' "

3. But if we are wrong in holding the remainder to be contingent, we find insuperable objections to the scheme worked out by appellant. The object of the transfer doubtless was to discharge the trust, the benefits of which the mother was willing to forego, that she might, at least during their minority, manage and control the property for her children, freed from any restraints by the trustees. Is this allowable by the simple expedient of a transfer of the life estate and in the absence of any pretense of mismanagement or fraud of the trustees? Aside from the question, raised in the briefs, that this may not be done, except by bill in equity (a question we do not find it necessary to decide), it seems to us that to carry out appellant's plan we must fly in the face of the testator's express directions, and this would be violative of the first duty of the court—namely, to effectuate his intention. The will bears the earmarks of skilled professional workmanship. That it was drawn with a view to have its provisions faithfully and, at least, substantially, followed cannot be doubted. The testator selected near of kin as his trustees and devised the property to them in trust, with power to manage and control the property and pay over the incomes to his widow and daughter for their support and maintenance and to the successor of either of them. He expressly provided that the trust should continue during the life of the survivor, whichever one it might be, and he expressly declared that the property was to vest in the children of his daughter then living or who might thereafter be born to her, at the death of the survivor, who might happen to be his widow, and not sooner. The character of the property suggests a necessity for wise and prudent management, for it consists of shares in a stage company and in a hotel property. If the testator had thought it unnecessary to place the management in the hands of his chosen trustees and for the period named by him, an entirely different method would have been adopted. But his desire was not only to provide support for his widow and daughter and the survivor of either, but to preserve the *corpus* of the estate for his daughter's children, and the duties of the trustees were to cease "upon the death of such survivor," the property and the accumulation to then vest in the children. It must not be overlooked that the will devises the property to the trustees, and it is only the incomes which are to be

paid to the widow and daughter. The remaindermen come into their own at the termination of the trust, the period of which is definitely fixed. The trustees were given power to lease or sell any of the property at public or private sale with or without notice and without the previous order of any court, and the testator's confidence in his trustees was such that he directed that no bond or other security be required of them, or either of them, at any time for the faithful performance of their duties. All these important powers and duties are to be no longer imposed upon anyone, and the control and management of the property is to pass to these two minor children with absolutely no provision for the protection of unborn children, except upon the principle that should any appear hereafter, the estate will open and let them in. The property involved is all personal property— shares in corporations—and may pass by indorsement. The decree prayed for places no restrictions upon these children in the disposition of the property, and it would be extremely difficult to so frame a decree as would protect unborn heirs, as might readily be done if the property were real estate. These children could vote the stock only through their guardian (Civ. Code, sec. 313); and, if an action in court should become necessary, it must be conducted by a guardian. (Civ. Code, sec. 42.)

Counsel for appellant was asked by my associate, Judge Hart, at the argument, how he would frame a decree that would place the entire trust fund in the hands of two minors and their guardian, and at the same time adequately protect the unborn children, and no satisfactory answer was forthcoming. The difficulties of accomplishing such a task are many. For myself I can see no way, if the estate is to be distributed to these children, except to establish by the decree some sort of a substituted trust for that created by the testator, and how can these minors act as trustees during minority? But why struggle to set aside the careful, well-considered and entirely sufficient means of effecting the testator's object which he provided?

It is altogether too narrow a view of the trust to say that the testator's widow and her daughter were the only beneficiaries of the will, or that they were the principal or only objects of testator's bounty. They were to receive only the

incomes, rents and profits; the *corpus* of the estate was to be husbanded, managed and controlled for the benefit of two children then living and others who might come after—the latter a probable event, for Mrs. Higgins' husband is living. The control and management of the estate was a large consideration with the testator, and, that the property might be protected and safely transmitted to the remaindermen was doubtless also of much concern to the testator in selecting his trustees.    It is inconceivable that he ever thought it possible or ever intended that the scheme he had so carefully devised for the benefit of all concerned should be disregarded and one wholly inadequate to accomplish his object substituted.    What say the courts upon this question?

In *Walker* v. *Sharpe,* 68 N. C. 363, a life estate was given the widow, remainder to her children at her death.    The children were all of age and the widow joined with them for a dissolution of the trust.    There was no possibility of other issue and the trustees did not object.    It was held that the children's interest vested at the death of their mother, and her surrender of the life estate was without a valuable consideration and was not entitled to the approval of the equity court.    In *Brady* v. *Walters,* 55 Ga. 25, the land was conveyed to B, the wife of C, for her sole and separate use, and the use of her children born and to be born.    *Held,* that a trust estate was created in B and for the use of her children, and that the trust was not executed until all probability of the birth of any more children had become extinct.    In *Brandenberg* v. *Thorndike,* 139 Mass. 102, [28 N. E. 575], a life estate was given to the widow, remainder to be paid three years after her death to certain named nieces and nephews then surviving.    The widow waived her life estate and took her dower instead.    The court said: "We must construe the bequest in favor of the nieces and nephews in the same manner as if the widow had accepted the provisions of the will.    Recurring to his bequest, it is clear that it cannot now be determined who will take under it.    It is a bequest to the nieces and nephews 'then surviving' and to the issue of each niece or nephew 'the deceased leaving issue them surviving.'    It cannot be known that any of the nieces and nephews now living will take anything under this bequest. This furnishes a conclusive reason why the trust cannot now

be terminated." The doctrine is stated in 28 American and English Encyclopedia of Law, second edition, page 946: "Where a trust is in favor of the children now living or that may hereafter be born of certain parents, the trustees will retain the title as long as there is a possibility of issue, which in the eye of the law continues as long as the woman lives, or coverture exists." (*Godfrey* v. *Roberts*, 65 N. J. L. 323, [55 Atl. 353]; *Bearden* v. *White* (Tenn.), 42 S. W. 476.) Cases where all the interested parties or parties who may be interested in the future are *in esse* and acting or capable of acting *suo jure*, are not in point here and do not apply to a trust where the persons who are to take can only be determined at the termination of the life estate or death of the life tenant.

We think the trial court reached a correct conclusion, and the judgment is therefore affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 10, 1910.