Katherine C. Pech, Executrix and Trustee under the Last Will and Testament of Adolph L. Pech, Deceased, Appellee, v. A. D. Landphere, Appellant.

## Gen. No. 7,873.

1. ESTATES OF DECEDENTS—*statutes held only for benefit of creditors.* Cahill's St. ch. 59, ¶¶ 10, 12, relating to "frauds and perjuries" and suits against heirs and devisees, are for the benefit only of creditors of an estate of a deceased person, and cannot be availed of by an heir.

2. EQUITY—*equitable conversion defined.* Equitable conversion is that constructive alteration in the nature of property by which in equity real estate is considered for certain purposes as personalty and transmissible and descendible as such, or personal estate as realty.

3. EQUITY—*basis of doctrine of equitable conversion.* Equitable conversion is an outgrowth or application of the maxim that equity regards that as done which ought to be done.

4. EQUITY—*prerequisites to application of doctrine of equitable conversion.* It is essential to the application of the doctrine of equitable conversion that the property to be so treated should be subject to a trust or a clear and imperative direction for conversion.

5. WILLS—*construction as to effecting equitable conversion.* A will authorizing executrix to borrow money and execute notes and mortgages, and, if in her judgment it is deemed advisable, to sell real estate upon such terms as she may deem advantageous, the proceeds to be used if necessary to pay debts, held not to effect an equitable conversion.

6. ESTATES OF DECEDENTS—*interest of representatives in realty and income.* Generally neither the executor nor the administrator has any inherent interest in title to or control over the realty of his decedent or the income therefrom.

7. DESCENT AND DISTRIBUTION—*title to lands subject to direction to sell for payment of debts.* If a provision in a will provides for the sale of land for the payment of debts or legacies or for the purposes of distribution, the executor does not take an interest in the real estate which would enable him to collect the rents and profits and manage and control the same, but the land goes to the heirs or devisees with full power of possession and use subject to being divested by said sale.

8. DESCENT AND DISTRIBUTION—*title of executrix to rents and profits where also sole devisee and life tenant.* Where executrix

was also sole devisee of personalty and life estate in all real property which was heavily incumbered but which she was authorized to sell or reincumber to pay debts, held that income from the realty was held by her as devisee and not as executrix and hence was subject to a personal judgment against her.

Appeal by defendant from the County Court of Logan county; the Hon. LAWRENCE B. STRINGER, Judge, presiding. Heard in this court at the April term, 1925. Reversed and remanded with directions. Opinion filed October 27, 1925.

STONE & TAYLOR, for appellant.

MILLER & MILLER, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is an appeal from a judgment rendered by the county court of Logan county in a case involving the trial of the right of property. Appellant was the owner of a judgment note signed by A. L. Pech and appellee, who was his wife. Pech died about the first of December, 1921. The note was duly filed as a claim against the estate, it being filed by the Lincoln State Bank of Lincoln, and the claim being for the sum of $1,845.42, which represented the principal of the note and accrued interest at that time. Appellee, the signer of the note, was duly appointed and qualified as executrix of her husband's estate and is still acting in that capacity. He left real estate to the extent of about 260 acres, being two farms, one of 160 acres which was incumbered with a mortgage of $20,000, and the other, known as the "Home Farm," of 100 or 103 acres, 70 of which were incumbered with a mortgage of $10,500. He also left personal property as shown by the inventory to the value of $11,573.88. Pech left a will and by the second clause of said will, after the payment of his debts, he devised all of his personal property to appellee absolutely. The third clause of the will is:

"I also give and devise unto my beloved wife Katherine C. Pech, all real estate of which I may die seized, of whatsoever the same may consist or wheresoever the same may be located, to have and to hold for and during the period of her natural life; Provided, however, I hereby authorize and empower my said wife, as executrix to borrow any sum or sums of money necessary to pay my debts, including debts secured by mortgages upon my real estate, and to execute and deliver promissory notes evidencing such debts and I authorize my said wife as executrix to execute, acknowledge and deliver any mortgage or mortgages or trust deed or deeds upon any of my real estate to secure the payment of said note or notes and I further authorize and empower my said wife as executrix, if in her judgment it is deemed advisable, to sell and by proper deed or deeds of conveyance to convey all or any part of my real estate, upon such terms as she may deem advantageous, the proceeds thereof to be used, if necessary, to pay my debts and in case the proceeds of any such sale are more than sufficient to pay my debts and costs of administration, any excess shall be reinvested by my said wife as executrix in either safe income producing securities or in other real estate the use and income therefrom only to be used by my said wife for the support of herself and children, provided, however, my said wife shall have the right from time to time to use such part of the principal of my estate, whether real or personal, as may be necessary for the proper support and maintenance of herself and the proper maintenance, support and education of my children. Upon the death of my said wife Katherine C. Pech, the remainder of my estate whether real estate or the proceeds of the sale of real estate, I hereby give, devise and bequeath to my children share and share alike, the child or children of any deceased child to take the share the parent would have taken if living."

At the time of the controversy in question, appellee, as executrix under the will, had collected personal assets belonging to the estate, which included all of the personalty to the amount of $10,619.99, and had

paid debts and claims amounting to the sum of $11,447.77, having advanced $827.78 of her own funds with which to make such payments. In addition to the mortgages there still remained debts and claims allowed against the estate to the amount of $6,118.22 and claims not allowed in the sum of $423.76.

On December 13, 1924, appellant took judgment on his note against appellee and a *fieri facias* issued out of the circuit court of Logan county on the same date, and under and by virtue of said *fieri facias* and judgment the sheriff of Logan county levied upon an undivided half interest in corn in the crib on the "Home Farm," as being the property of appellee. This "Home Farm" had been managed and controlled by appellee subsequent to the death of her husband, and during the year 1924, the year in which the corn in question was raised, she had rented the farm to Moses Brining as tenant, under a lease agreement, wherein one-half of the grain raised was to be delivered over by him as rental. At the time the levy was made the corn was still in the crib and had not yet been divided. After the levy had been made appellee filed a notice with the sheriff of Logan county stating that the corn was not her individual property, but was an asset of the estate of her husband, Adolph L. Pech, and that as executrix of said estate she intended to prosecute a claim to the same. The matter was set for a hearing and under a statement of facts stipulated by both parties a judgment was rendered in the county court of Logan county finding for the plaintiff, appellee, as executrix, and that the corn was an asset of the estate of Adolph L. Pech, deceased. From this judgment the defendant appeals.

Appellee attempts to support the finding in the lower court under the provisions of section 10, ch. 59, of the Revised Statutes, entitled "Frauds and Perjuries" [Cahill's St. ch. 59, ¶ 10], which provides that any testamentary disposition of real estate, or the

rents out of the same, shall be null and void as to creditors, and section 12 of the same chapter [Cahill's St. ch. 59, ¶ 12], which provides for suits in proper cases against heirs and devisees; but it has been repeatedly held that the benefit of the sections cited could only be availed of by a creditor of the estate of a deceased person. *Fry v. Morrison,* 159 Ill. 244; *Calhoun v. Tangany,* 105 Ill. App. 23; *Richardson v. Richardson,* 87 Ill. App. 358, and *Richardson v. Ranson,* 99 Ill. App. 262. In *Richardson v. Richardson, supra,* the court said:

"The law is so familiar in this State as to require no citation of authorities, that the administrator or executor, so far as creditors are concerned, takes the property of the deceased person precisely as it was left at the time of decease, whether such condition is the result of the operation of the law, or the act of the party himself. He is the representative of the intestate or testator, and succeeds to his rights and interests, and is not the agent or trustee of creditors, and as to the latter it can make no difference whether there be a will or not, for in either case he is entitled to prove his claim and participate in the distribution of the assets as the law directs. If fraudulent conveyances, or other fraudulent disposition of property by the deceased person should intervene to affect his rights prejudicially the creditor alone and not the representative can invoke the remedy."

Appellee is not a creditor of the estate, but a devisee and legatee under the will in addition to being the executrix. Appellant is not invoking the aid of the Frauds and Perjuries Act, and appellee is not the representative of any creditor or claimant of the estate or entitled in her own behalf to invoke the aid of these sections, as they can be invoked by a creditor only. In fact, this suit is between two individuals in their personal capacity and the question of the will or estate has no bearing upon the issues involved except to trace the source of appellee's title to the corn in question. The will devised to appellee the

life use of the lands upon which the crop was raised, and the corn was raised by appellee's tenant, one-half of the crop in the crib, by the lease, to be appellee's rental for the land.

The testator, Pech, in the first clause of the will, provided for the payment of all his just debts and funeral expenses by his executrix in due course of administration, and the devise of the life estate in the lands to appellee, by its terms, is made subject to the payment of his debts. Appellee insists that these provisions create a charge upon the lands for the payment of debts and that when it becomes necessary to sell lands to pay debts the rents or profits arising from devised real estate are considered the same as real estate.

In *Decker v. Decker,* 121 Ill. 341, the court said that the formula "after the payment of my funeral expenses and just debts, I give," etc., preceding a disposition in a will of both real and personal property, indicated a purpose not to specifically charge the testator's realty, but to make all gifts in the will, whether of real or personal property, subject to the payment of debts. In *Harris v. Douglas,* 64 Ill. 466, where the will provided for the payment of debts out of the personalty and, if that was insufficient, then the executor was authorized to sell so much of the realty as was necessary to pay the debts, the court held, on page 471, that no specific property was charged by the will with the payment of debts; that such provisions do not create any specific charge on the real estate other than the law creates. *Bucher v. Bucher,* 86 Ill. 381.

We have examined all of the cases cited by appellee, but they do not support appellee's contention as applied to the facts in this case.

Appellee further contends that when the general scheme of a will requires a conversion of the real estate, the power of sale, although not imperative,

operates as an equitable conversion. Equitable conversion may be defined as that constructive alteration in the nature of property by which in equity real estate is considered for certain purposes as personalty and transmissible and descendible as such, or personal estate as realty. It is an outgrowth or application of the old maxim that equity regards that as done which ought to be done, and therefore, to the operation of the doctrine, it is essential that the property to be so treated should be subject to a trust or a clear and imperative direction for conversion. *Haward v. Peavey,* 128 Ill. 430; *Ducker v. Burnham,* 146 Ill. 9. "There must be an expression, in some form, of an absolute intention that the land shall be sold and turned into money, or that the money, shall be expended in the purchase of land. * * * If the act of converting is left to the option, discretion or choice of the trustees or others charged with making it, no equitable conversion will take place, because no duty to make the change rests upon them." [*Haward v. Peavey, supra,* p. 435.]

The testator's estate was involved; there were farms incumbered by mortgages in large amounts. The will authorized the executrix to borrow money and to execute notes and mortgages or trust deeds and he authorized his executrix, "if in her judgment it is deemed advisable, to sell and by proper deed or deeds of conveyance to convey all or any part of my real estate, upon such terms as she may deem advantageous, the proceeds thereof to be used, if necessary, to pay my debts."

This is far from a peremptory devise to sell and does not effect an equitable conversion. Appellee further contends that the executrix is vested with the powers of a trustee over this property for the benefit of the creditors and for the payment of debts. This construction might be placed upon any will which provided for the payment of testator's debts. It was

held in *West v. Fitz,* 109 Ill. 435: "While it may savor somewhat of technical refinement and astute discrimination, it is clearly settled by the general current of English and American authority, that if a testator, by his will, simply directs his executor, or a trustee, to sell real estate and apply the proceeds to certain specified purposes, such executor or trustee will take a *power* only; whereas, if the devise be *to the executor or trustee* to sell and apply the proceeds, etc., such executor or trustee will take an estate in the land, and not a mere power. (2 Washburn on Real Prop. 661.)" The same rule is laid down in *Drake v. Steele,* 242 Ill. 310. Certainly, so far as the debts are concerned, there is no language in the will that contravenes the provisions of the first clause of the will that the debts are to be paid in the due course of administration. Under the common law, the personal representative of an estate had no right, title or interest in or to the rents and profits of real estate accruing after the death of the decedent. (*Dixon v. Niccolls,* 39 Ill. 372; *Pritchard v. McGregor,* 205 Ill. App. 362; *Hollahan v. Sowers,* 111 Ill. App. 263.) The courts of this State follow the common-law rule and hold that, generally, neither the executor nor the administrator has any inherent interest in, title to or control over the realty of his decedent or the income therefrom. (*Anderson v. Shepard,* 285 Ill. 544; *Emmerson v. Merritt,* 249 Ill. 538; *Sherman v. Dutch,* 16 Ill. 285.) If a provision in a will provides for the sale of land for the payment of debts or legacies, or for the purpose of distribution, the executor of the estate does not take an interest in the real estate which would enable him to collect the rents and profits and manage and control the same, but the land goes to the heirs or devisees, with full power of possession and use, subject to being divested by said sale. (*Pritchard v. McGregor, supra; Bucher v. Bucher,* 86 Ill. 377; *Smith v. Hunter,* 241 Ill. 516; *Richardson*

*v. Richardson,* 87 Ill. App. 354; 24 Corpus Juris, p. 139, and cases cited.)

*Bucher v. Bucher, supra,* was a case nearly identical with the case at bar, and the court held that the executrix, as executrix, had nothing to do with the rents and profits of land but that such rents and profits were the property of the executrix, as devisee. It follows that the judgment of the county court of Logan county should be and is reversed and the cause remanded with directions to that court to enter a judgment finding that the right of property in the corn in question was in the sheriff of Logan county, under the execution issued upon appellant's judgment.

*Reversed and remanded with directions.*