APPEAL OF WISCONSIN NATIONAL BANK.

Docket No. 2511.    Submitted June 12, 1925.    Decided June 21, 1926.

1. Deduction for exhaustion of leasehold on basis of March 1, 1913, value allowed.
2. Deduction for obsolescence of building disallowed.

*Douglass Van Dyke, Esq.*, and *Harold C. Anderson, C. P. A.* for the petitioner.

*A. H. Fast, Esq.*, for the Commissioner.

Before Sternhagen, Lansdon, Green, and Love.

The Commissioner has determined a deficiency in income and profits taxes for the year 1918, in the amount of $79,074.30, of which the amount of $76,558.27 is in controversy. The two issues involved are (1) exhaustion of a leasehold acquired by the taxpayer prior to March 1, 1913; and (2) obsolescence of a building owned by the taxpayer during the year 1918.

### FINDINGS OF FACT.

The petitioner was incorporated under the laws of the United States as a national bank in 1892, and was engaged in the banking business in Milwaukee until June 30, 1919, when it was consolidated with the First National Bank of Milwaukee, under the name of the First Wisconsin National Bank of Milwaukee.

On February 20, 1890, Frederick Pabst leased Lot 6 in Block 2 in the Seventh Ward of the City of Milwaukee, for a term of 99 years from May 1, 1890, on terms and conditions not in controversy in this appeal but which are fully set forth in the record. In 1891 Pabst erected on such leased land a structure known as the Pabst Building. In 1892 the petitioner leased and occupied the main floor of such building as the tenant of Pabst.

In 1904 the petitioner purchased the building and leasehold from Pabst for a consideration of $432,000. The purchase price was never segregated on its books as to the respective amounts paid for the leasehold and the building, but the parties have stipulated that $315,693.50 represents the cost of the building and $116,806.50 the cost of the leasehold.

Prior to December 31, 1917, the petitioner had acquired a two-sixths interest in the fee of the building site and, some time during 1918, it acquired an additional two-sixths interest in such fee. Subsequent to 1918, the remaining two-sixths interest in said fee was acquired.

The parties agree that the fair market value of the Pabst Building on March 1, 1913, was $460,100, and that the depreciated March 1, 1913, value on December 31, 1917, was $371,147.33; that the depreciated cost of the petitioner's interest in the leasehold in question was $81,086.99 on March 1, 1913, and $65,350.61 on December 31, 1917, and that the fair market value of its interest in the leasehold was $193,130.36 on March 1, 1913, and that the exhausted fair market value of the same on December 31, 1917, was $180,874.73.

On account of a very substantial growth in volume of business, it became evident in 1918 that the Pabst Building was no longer

adequate for the purposes of the petitioner, either as to space or arrangement of rooms. On December 12, 1918, the directors of the petitioner decided to demolish such building and erect a new structure on the same site, especially designed and planned for a bank. In pursuance of such decision an architect was employed, tentative plans for a new building were drawn and considered, and the directors were authorized by the stockholders to proceed with the work of demolition and construction. Resulting from the plans for demolition, the petitioner, December 31, 1918, wrote down the book value of the Pabst Building in the amount of $100,000, which included ordinary depreciation for the year, and a further write-off for obsolescence on account of the proposed demolition of the structure, and deducted such amount from its gross income in its income and profits-tax return for the calendar year 1918.

Upon the consolidation of the petitioner with the First National Bank of Milwaukee, on June 30, 1919, the plans to demolish the Pabst Building and to erect a new structure were abandoned. The office space theretofore used by the petitioner was let to another bank, and such banking quarters, together with the office rooms on the upper floors of the building, have ever since been continuously occupied by paying tenants.

In the consolidation of the books of the petitioner and the First National Bank of Milwaukee upon the consolidation of such concerns into the First Wisconsin National Bank of Milwaukee, the Pabst Building was taken into the assets of the new bank at its book value of December 31, 1917, less the amount of $100,000 written off as depreciation and obsolescence in 1918, and the leasehold in question was taken into such assets at its book value at the date of merger, which was the exhausted 1913 value stipulated by the parties to this appeal.

OPINION.

LANSDON: Two issues are presented for the consideration of the Board in the determination of this appeal: (1) Whether the depreciated cost at March 1, 1913, or the fair market value as of that date, shall be used as the basis for computing the petitioner's deduction from gross income for the year 1918 as exhaustion of a certain leasehold on real estate; and (2) whether the petitioner may take a deduction for obsolescence of its bank building in its income-tax return for the year 1918 in excess of the amount of ordinary depreciation allowed by the Commissioner.

The parties agree as to the values involved. The petitioner acquired the leasehold in 1904 at a cost of $116,806.50, and the depreciated cost of its interest therein was $81,086.99 on March 1,

1913, at which time the fair market value was $193,130.36. On December 31, 1917, the depreciated cost was $65,350.61 and the value remaining, after ratably exhausting the fair market value at March 1, 1913, for the intervening period was $180,874.73. The petitioner contends that for the year 1918 it is entitled to deduct an aliquot part of the fair market value of the lease as of March 1, 1913, from its gross income in its income and profits-tax return. This contention is denied by the Commissioner, who asserts that the correct basis for the exhaustion of the leasehold is the depreciated cost of March 1, 1913. On this point the Board must hold that the petitioner's contention is sound. *Appeal of Grosvenor Atterbury*, 1 B. T. A. 169, and others in which the same principle is involved.

There is, however, an additional element in this controversy which must be considered. Prior to or about March 1, 1913, the petitioner became the owner of two-sixths of the fee of the real estate covered by the leasehold in question, and, some time during the year 1918, it acquired an additional two-sixths interest in such fee. Neither party bases its contentions on the petitioner's ownership of such fractions of the fee, and the petitioner voluntarily concedes that it is not entitled to exhaustion of that part of the leasehold represented by its two-sixths interest in the fee on March 1, 1913. The Commissioner suggests that there may have been a merger of the lesser with the greater estate resulting from the petitioner's ownership of a fraction of the fee, and insists, in any event, that the petitioner is entitled to exhaustion of only two-sixths of whatever value of the leasehold is the proper basis for the computation of exhaustion.

The rule as to the merger of lesser estates with greater estates is well established:

Whenever a greater estate and a less coincide and meet in one and the same person, without any intermediate estate, the less is immediately annihilated; or, in the law phrase, is said to be *merged*, that is, sunk or drowned in the greater. Thus, if there be a tenant for years, and the reversion in fee simple descends to or is purchased by him, the term of years is merged in the inheritance and shall never exist any more. But they must come to one and the same person in one and the same right; else, if the freehold be in his own right and he has a term in right of another (*en auter droit*) there is no merger. Sharswood's Blackstone, Vol. I, Book II, 177.

Bouvier says, under the caption " Merger of Estates ":

When a greater estate and less coincide and meet in one and the same person, without any intermediate estate, the less is immediately merged, that is, sunk or drowned, in the latter; but they must be in one and the same person, at one and the same time, in one and the same right. *Nicholson* v. *Halsey*, 1 Johns. Ch. (N. Y.) 417; *Lockwood* v. *Sturdevant*, 6 Conn. 373.

To have the union operate a merger, the estates must unite in one and the same person, having a commensurate and coextensive interest in each, with

no intervening interest in another. A legal estate in fee in one who has only a partial equitable interest, or vice versa, would not merge. *In re Washburn's Estate*, 11 Cal. App. 735; 106 Pac. 415.

Where the lessee of land becomes the owner thereof in fee, the lease is terminated and the lesser estate is merged into the greater. 24 Cyc. 1342. *McMahan* v. *Jacoway*, (Ala.) 17 So. 39; *Hudson Bros. Com. Co.* v. *Glencoe Sand & G. Co.*, (Mo.) 41 S. W. 450; *Story* v. *Ulman* (Md.), 41 Atl. 120.

In order that there may be a merger it is essential that there should be at least two distinct estates, a greater and a lesser, meeting in the same person, or class of persons, at the same time and without any intervening estate. 21 Corpus Juris, 1035-36.

In this appeal the parties agree that the lease was not terminated by the acquisition of a fraction of the fee by the petitioner which was the owner of the entire leasehold. Although the lessee purchased portions of the fee at different times, the leasehold, nevertheless, continued to have a legal existence in its entirety and so could have been sold or otherwise transferred as a whole at any time prior to legal merger of the lesser and greater estate through acquisition of the entire fee by such lessee.

The Board is of the opinion that no merger of the lesser with the greater estate involved in this appeal took place until the entire fee was acquired by the petitioner at a date subsequent to the year involved. The petitioner is entitled to deduct four-sixths of an aliquot part of $193,130.96 from its gross income for exhaustion of the leasehold in question during the calendar year 1918.

In making its income and profits-tax return for the calendar year 1918, the petitioner deducted the amount of $100,000 for ordinary depreciation and obsolescence of the Pabst Building, which it owned at that time. Such deduction was based on the decision of its directors that such building should be demolished and one more suitable for banking purposes erected as soon as possible after January 1, 1918. The Commissioner has disallowed all this deduction in excess of the normal or ordinary annual depreciation of such building.

The law permits, and, in some instances, the Board has sanctioned, deduction for obsolescence of tangible property. The petitioner argues that it was certain that the building in question would be demolished within three years at the outside, and that it was, therefore, entitled under the law to recover the unextinguished useful value of its property during that period, and so, for the first year of such period, took a deduction equal approximately to one-third of the remaining book value of the building which it had decided to demolish.

The evidence discloses that the demolition and construction plans considered prior to December 31, 1918, were not carried out. The petitioner was consolidated with another corporation in the same

business that had quarters adequate for the operations of the combined banks. The building in question was not demolished. The space formerly occupied by the petitioner is now used by a large bank, which pays a substantial rental. The office space in the upper parts of the building is all taken by rent-paying tenants. No matter what may have been the plans of the petitioner in December, 1918, those plans were abandoned. Argument that consolidation with another corporation and the use of the business premises of that concern was, in effect, a demolition of the petitioner's building, since it involved abandonment of offices long used, is not persuasive. The determination of the Commissioner disallowing extraordinary depreciation or obsolescence of the petitioner's building for the calendar year 1918 is approved.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*