ANNIE P. KOUNTZE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11878.   Promulgated October 15, 1929.

*Lyle T. Alverson, Esq.*, for the petitioner.

*J. Arthur Adams, Esq.*, and *Frank S. Surene, Esq.*, for the respondent.

930

OPINION.

MURDOCK: The Revenue Act of 1921, in section 250 (d), contained a provision that the taxes due under any return made under prior income, excess-profits or war-profits tax acts should be determined and assessed within five years after the return was filed unless both the Commissioner and the taxpayer had consented in writing to a later determination, assessment and collection of the tax, and no suit or proceeding for the collection of any such taxes should be begun after the expiration of five years after the date when such return was filed. The Revenue Act of 1924, in section 277 (a) (2), contained a similar provision. It also provided in section 278 (d) that where the assessment of the tax was made within the period prescribed, such tax might be collected by distraint or by a proceeding in court within six years of the assessment of the tax. It was held, however, in *United States* v. *Russell*, 278 U. S. 181, that where the assessment of the tax was made prior to June 2, 1924, the day on which the Revenue Act of 1924 was approved, the 6-year period mentioned for collection would not apply. In the present case the return was filed on March 27, 1918. The 5-year period therefore expired on March 27, 1923. There is no suggestion in this case that the return was false or fraudulent and the Commissioner has not shown the existence of any exception which would remove the case from the 5-year operation of the statute. *Farmers Feed Co.*, 10 B. T. A. 1069. Of course, no suit or proceeding for the collection of the tax was begun in time. Therefore, when the Commissioner made his final determination on December 19, 1925, he was making that determination more than five years after the return was filed and the collection of the deficiency asserted by him was then barred, and we therefore hold that there is no deficiency.

Counsel for the petitioner contends that a favorable decision upon the merits of this case would result in a refund to the petitioner, and we therefore will consider the question of whether the distribution,

or any part thereof, received in 1917 was from earnings or profits accrued since March 1, 1913. The petitioner offered in evidence certain documents relating to the proceeding on our docket at number 7888, entitled *Trustees for Ohio & Big Sandy Coal Company, United Thacker Coal Company, and Federal Gas, Oil & Coal Company, Petitioners, v. Commissioner of Internal Revenue, Respondent.* Our decision of that case was published in 15 B. T. A. 273. One of the issues in that proceeding was the March 1, 1913, value of the coal lands sold by the United Thacker Coal Co. on September 17, 1917, the same property which is involved in this proceeding. The petitioner contends that the papers which he has offered in evidence show that the net income of the United Thacker Coal Co. for the period from April 30 to December 20, 1917, was $405,949.09. She then subtracts the taxes of the company for the year 1917 to arrive at the amount of $351,398.81 as the balance available for the recoupment of previous losses, and contends that, since the surplus deficit from 1904 until April 30, 1917, was $883,862.92, or at least an amount in excess of $351,398.81, the company had no earnings or profits accrued since March 1, 1913, and in fact had no undivided profits or surplus from which it could make a distribution within the meaning of section 31 of the Revenue Act of 1917, which added the section in question to the Act of September 8, 1916. In this method of computation the petitioner loses sight of the fact that in the computation approved by the Board in the *Big Sandy* case, the profit from the sale of the coal land was determined by the use of March 1, 1913, value, which the Board assumed was greater than cost.

This method was proper under the statute permitting the use of such value for the determination of the profit from the transaction which the corporation should report as income for the year in which the sale took place, which was the problem before the Board in the *Big Sandy* case. But we are not now concerned with this profit nor are we concerned with the net income of the corporation for the year 1917 which it should have reported in that year for income-tax purposes. We are here concerned with the question of whether or not on December 22, 1917, the company had any undivided profits or surplus which consisted of earnings or profits accrued since March 1, 1913. The petitioner contends that at the time of the distribution, the company had no surplus or undivided profits of any kind. The facts in evidence fail to support this contention, as is demonstrated by a proper computation to arrive at the correct surplus, if any, of the corporation on December 22, 1917. In such computation the profit from the sale of property determined by the use of March 1, 1913, value which was in excess of cost, should not be used alone to offset deficits which occurred both before and after March 1, 1913, because the statute contains no provision for the use of March 1, 1913, value

in this connection. On the contrary, the profit from the sale in 1917 which should be used to offset operating deficits occurring both before and after March 1, 1913, in computing the correct surplus of the company on December 22, 1917, should be determined by using the cost of the property sold. In this way only can we determine whether or not on December 22, 1917, the corporation had any surplus or undivided profits available for the payment of dividends.

We can not make such a computation in the present case because we do not know the cost of the property sold. For example, if it had cost only $2,000,000, the correct book profit from the sale which should be used in wiping out all past operating deficits would be far more than sufficient for the purpose. Thus, so far as the record discloses, the company might have had a book surplus on December 22, 1917, of several million dollars after wiping out all past operating deficits, and the question then is whether any part of this surplus represents income or profits accrued since March 1, 1913.

When the company sold a part of its property on September 17, 1917, it received $735,300 in excess of the sum of the expenses of the sale plus the March 1, 1913, value of the property as determined by this Board in the *Big Sandy* case. Also, we know that from March 1, 1913, to December 22, 1917, the company received small amounts of income which could probably be determined from the evidence. All of this income, however, and all of the $735,300 above mentioned, might represent income or profits of the company accrued since March 1, 1913, not needed to wipe out past operating deficits and thus would be taxable as dividends in the hands of the distributees. In the present case we do not know the total number of shares of the United Thacker Coal Co. outstanding at the time of the distribution and with respect to which the distribution in question was made, nor do we know the number of these shares owned by the petitioner, although in the companion case to this one we do know the number of shares owned by Luther Kountze, but there again we do not know the total shares of the stock outstanding.

If either the petitioner in this case or the petitioner in the companion case of *Executor of Luther Kountze*, 17 B. T. A. 956, made a proper allegation in regard to the capital stock of the United Thacker Coal Co. outstanding at the time of the distribution, at any rate the respondent has admitted no such allegation and there is no proof of this fact, although there is proof of the number of shares originally issued by this company. Consequently, we are unable to tell what amount the Commissioner has used as representing the income and profits of the company accrued since March 1, 1913, and we can not say that he erred in his determination that the sum of $54,695.39 received by the petitioner was taxable as a dividend.

In passing we might also point out that, as the company was on a cash receipts basis, we see no justification for the petitioner, in her computation of the 1917 income available for the recoupment of the previous losses, subtracting income and profits taxes for the year 1917.

Reviewed by the Board.

*Judgment of no deficiency will be entered.*

GREEN did not participate.