ALBERT J. GIFFORD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM H. LELAND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SUBBO NIKOLOFF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 28010, 28011, 31823, 31921, 39279. Promulgated January 14, 1930.

*Merrill S. June, Esq.,* for the petitioners.
*Harold Allen, Esq.,* and *W. R. Lansford, Esq.,* for the respondent.

OPINION.

LANSDON: The only question to be determined here is whether the distributions to stockholders of the corporation, voted and made as

set forth in our findings of fact, were dividends declared and paid by the Leland-Gifford Co., and, to the extent to which such payments were made from earnings, taxable to the petitioners in the several amounts asserted by the respondent.

The corporation was organized and property paid in for stock and paid-in surplus in the amounts which we have found in our findings of fact. The petitioners maintain that under the laws of Massachusetts, no section of which is cited by them, the corporation was entitled to distribute its paid-in surplus and retain for the expansion of its operations and other proper purposes all of its current earnings. Aside from the express provisions of the laws which apply to the situation here, it is obvious that if such procedure were permitted the stockholders of a corporation with a large paid-in surplus might receive income annually for many years without sustaining any liability for tax or surtax, on the theory that the moneys received were distributions of capital and not of current earnings. Congress in the Revenue Acts of 1921 and 1924, provided for this situation. The Act of 1921 provides, in section 201:

That the term "dividend" when used in this title * * * means any distribution made by a corporation to its shareholders or members, whether in cash or in other property, out of its earnings or profits accumulated since February 28, 1913 * * *.

(b) For the purpose of this Act every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to the extent of such earnings or profits accumulated since February 28, 1913; but any earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, may be distributed exempt from tax after the earnings and profits accumulated since February 28, 1913, have been distributed. * * *

Relevant portions of section 201 of the Revenue Act of 1924 read as follows:

(a) The term "dividend" when used in this title * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

(b) For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but such tax-free distribution shall be applied against and reduce the basis of the stock provided in section 204.

It is obvious that the purpose of Congress in enacting these provisions was to assure the taxation of the current earnings of a corporation distributed and made income to its stockholders. The language of the resolution providing for the distribution, although it states that the disbursements were to be made from paid-in surplus, can have no effect upon the plain intent of Congress, as set forth in

the statutory provisions above quoted. The petitioners suggest that the property taken into the assets of the corporation as paid-in surplus was in fact the property of the members of the former partnership and should be regarded as a temporary loan to the corporation. Nothing in the record supports this theory. The value of such assets was taken into the capital structure of the corporation as paid-in surplus and thereafter it was at risk in the business and subject to all the hazards and risks of paid-in capital. Clearly it was in no sense a loan and there is no evidence that it has ever been so regarded except for the purpose of contesting the deficiencies herein proposed by the respondent. It therefore follows that the determination of the Commissioner must be approved.

In his computation of the deficiencies asserted against Gifford and Leland for the year 1924, the respondent failed to consider the net loss sustained by the corporation in 1921, in the amount of $61,361.21, and at the hearing his counsel confessed error in this particular and now concedes that the amount of corporation earnings available for distribution at December 31, 1924, was $315,329.99, instead of the larger amount which he had theretofore determined.

As a further, or alternative issue, the petitioners contend that, even if the distributions made in 1924 are taxable to them, the amount of the net earnings available for such distribution on January 31, 1924, should be regarded as the basis, rather than the amount available at December 31 of that year. In *Mason* v. *Routzahn*, 275 U. S. 175, Justice Brandeis, speaking for the court, said: " We think it clear that for this purpose [whether distributions were taxable under 1916 or 1917 rates] the date of payment, not the date of the declaration of the dividend is the date of distribution." As the dividend here in question, declared on January 31, 1924, was not " distributed " until payment was made on December 31 of that year, at which date all the net earnings of the Leland-Gifford Co. for such year were available for distribution, it follows, therefore, that on this issue the determination of the respondent must be approved.

Reviewed by the Board.

*Decision will be entered under Rule 50.*