CHARLES J. CANFIELD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM R. THORSEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 34131, 38095. Promulgated October 27, 1931.

*Edwin H. Cassels, Esq.,* and *Andrew L. Campbell, C. P. A.,* for the petitioners.

*Harold Allen, Esq.,* and *Willis R. Lansford, Esq.,* for the respondent.

OPINION.

SEAWELL: The applicable law in the instant case is found in the Revenue Act of 1921 and reads as follows:

SEC. 201. (a) That the term " dividend " when used in this title  *  *  * means any distribution made by a corporation to its shareholders or members, whether in cash or in other property, out of its earnings or profits accumulated since February 28, 1913,  *  *  *

(b) For the purposes of this Act every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to the extent of such earnings or profits accumulated since February 28, 1913; but any earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, may be distributed exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed.  *  *  *

The petitioners contend that the difference between the total of the profits for the several years beginning with March 1, 1913, down to and including April 14, 1923, and the losses for the years in which losses were sustained in such period is the total " accumulated since February 28, 1913." That difference is shown to be $2,050,435.93. They insist that the surplus on February 28, 1913, of $4,332,684.78 represents earnings and profits accumulated prior to March 1, 1913, and being such are by the specific provisions of section 201 (b) of

the Act exempt from the tax; that the surplus so created and existing can not be changed by any subsequent event; and that *subsequent* losses would have to be made good from *future* earnings or profits before there could be any earnings or profits " accumulated since February 28, 1913," which, when distributed as dividends, would be subject to tax.   In other words, the petitioners do not accept the interpretation of the meaning of the word " accumulated " as used in the phrase· " accumulated since February 28, 1913," as considered in O. D. 610, C. B. 3, p. 24, and A. R. M. 82, C. B. 3, p. 36, and as likewise construed by the respondent and applied in the instant cases.

The respondent in making his determination excludes from consideration for the period " since February 28, 1913," the losses (except to the extent of $4,594.62, profits for the year ending February 28, 1914) sustained in the year ended February 28, 1915, of $193,-139.67, and in the year ended February 29, 1916, of $211,707.32.   To March 1, 1913, surplus of $4,332,684.78, he adds the profits for the year ended February 28, 1914, of $4,594.62, making a total of $4,337,-279.40, from which he deducts the sum of the losses which occurred in the years ended February 28, 1915, and February 29, 1916, amounting to $404,846.99, still leaving a surplus of $3,932,432.41 on February 29, 1916.

After February 29, 1916, there are no further losses shown, only profits which from such date to April 14, 1923, the evidence indicates, amount to $2,450,688.30.   From such amount respondent deducts the total of dividends, $1,290,000, paid prior to April 14, 1923, leaving taxable earnings or profits of $1,160,688.30 to be appropriated towards the payment of the April 14, 1923, dividend of $5,-100,000.   The difference between the $1,160,688.30 and the $5,100,000 declared and paid as a dividend April 14, 1923, is $3,939,311.70 and represents, so respondent contends, the portion of the dividend of April 14, 1923, paid out of the earnings or profits which constituted part of the surplus accumulated prior to March 1, 1913, and is tax-exempt as dividends in the hands of the recipient stockholders.

Of the dividend of $5,100,000 paid April 14, 1923, the petitioner Canfield received $204,000 and the petitioner Thorsen, $1,111,800, and if the respondent's method of tax computation is correct, each of the petitioners is taxable on 22.75 per cent of the dividend so received instead of on the larger percentage originally asserted by the respondent, but since conceded by the respondent to be incorrect.

In the year ended February 28, 1914, the company made a profit of $4,594.62 and if it had then, out of its total earnings or surplus, declared a dividend and made distribution even in excess of the $4,594.62, but less than the entire surplus, the whole dividend would have been taxable to the recipients thereof.   The revenue law ex-

empting from taxation dividends declared out of earnings accumulated prior to March 1, 1913, was not enacted until September 8, 1916. In *Lynch* v. *Hornby*, 247 U. S. 339 (decided June 3, 1918), the court said:

We repeat that under the 1913 Act dividends declared and paid in the ordinary course by a corporation to its stockholders after March 1, 1913, whether from current earnings or from a surplus accumulated prior to that date, were taxable as income to the stockholder.

No dividend was declared, however, out of the earnings for the year ending February 28, 1914, and it was accordingly proper for the corporation to add that sum, $4,594.62, to its accumulated surplus, bringing it to the sum of $4,337,279.40. When in the two succeeding years there were operating losses by the corporation charged, of course, against surplus, the surplus was reduced by the sum of the losses, $404,846.99, resulting in a new surplus on February 29, 1916, of $3,932,432.41.

The treatment to be accorded this new surplus and the earnings and profits thereafter accumulated by the corporation contains the matter in controversy here. The petitioners contend that since the new surplus is less than the surplus existing at March 1, 1913, all subsequent earnings and profits of the corporation should be added to this new surplus until it equals the surplus on hand at March 1, 1913, before dividends paid to stockholders are taxable.

In other words, the petitioners contend that they are not taxable on any dividend declared and paid at any time after March 1, 1913, although the corporation has had gains in that period, if for any cause, the corporation's surplus is less than what it was on that basic date; and they urge on us the construction of the clause of the statute "earnings or profits accumulated since February 28, 1913," that a period of all the years since March 1, 1913, should be considered together to ascertain whether there have been net accumulations for the whole period. It is elementary that the different parts of a statute are to be considered *pari materia*. Certainly no part of a statute should be so interpreted as to annul any other part. When the statute provides that "every distribution is made * * * from the most recently accumulated earnings or profits, to the extent of such earnings or profits accumulated since February 28, 1913," there is implied that some earnings or profits may belong to a class accumulated more recently than others. If all the years since March 1, 1913, are to be taken together and additions and subtractions made to ascertain if earnings or profits have "accumulated" and the amount thereof during the period, then there would not seem to be much reason for ascertaining the nearness or remoteness of such earnings or profits. It could make no difference whether the distri-

butions or dividends were from the most recent or most remote accumulations, since they all lie in one hodgepodge. Surely Congress had some reason for inserting in the statute the provision as to the most recent accumulations. All income-taxing statutes under the Sixteenth Amendment are based on yearly periods, either calendar or fiscal years. Returns are so made out and gains and losses calculated so as to show profit or loss during the year, and for such a period it is immaterial which part of the gain is more recent or remote. It would seem singular if Congress did adopt the yearly period in taxation matters for all times and under all circumstances, except at the time of the enactment of the statute now under consideration and then only for part of the statute. It is more consonant with reason to suppose that Congress, when it provided for " accumulations since February 28, 1913," had reference to accumulations in yearly periods. A contrary interpretation of the taxing law has been sought without success. In *Edwards* v. *Douglas*, 269 U. S. 204, 217, the court said, in interpreting similar provisions of the Revenue Act of 1917, section 31 (b) :

\* \* \* To accomplish the purpose of Congress it was necessary that the dividend be deemed to have been paid out of the available profits or earnings of the most recent year or years. Its intention so to provide was adequately expressed by the use of the phrase " most recently accumulated " in connection with the words " undivided profits or surplus." \* \* \*

The Supreme Court in another case later said:

\* \* \* A taxpayer may be in receipt of net income in one year and not in another. The net result of the two years, if combined in a single taxable period, might still be a loss; but it has never been supposed that that fact would relieve him from a tax on the first, or that it affords any reason for postponing the assessment of the tax until the end of a lifetime, or for some other indefinite period, to ascertain more precisely whether the final outcome of the period, or of a given transaction, will be a gain or loss. [*Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359.]

The only losses of the West Side Lumber Company were for the years ending February 28, 1915, and February 29, 1916. The petitioners, who received dividends in 1923 from the corporation, contend in effect that the losses for those two years should be carried forward and deducted from gains in the years ending February 28, 1917, 1918, 1919 and 1920. The Revenue Act of 1918, section 204, permitted a net loss in one year to be carried to the preceding year to reduce the income in that year, and if in excess of such income for the preceding year, to have such excess carried forward to the succeeding year for a similar purpose as to the income in the succeeding year. But we know of no such provision of law applicable to the years here involved, and the Act of 1918 is not retroactive, or claimed by petitioners so to be. There was at the time of these

losses, which aggregate $404,846.99, no operating deficit of the corporation, but an undivided surplus, as before stated, of $4,337,279.40, all of which, except $4,594.62, was accumulated prior to March 1, 1913. The undivided surplus, therefore, was adequate to take care of the operating losses in the two years mentioned, without in any way impairing the capital of the corporation, which amounted to $1,500,000.

The petitioners cite two recent court decisions which they insist sustained their contentions, viz., *Leland* v. *Commissioner*, 50 Fed. (2d) 523, and *Hadden* v. *Commissioner*, 49 Fed. (2d) 709. In the *Leland* case, first cited, the Board of Tax Appeals, 18 B. T. A. 795, is affirmed. In the opinion of the court it is said:

Then again, as the Leland-Gifford Company had on hand, at the time the distributions were made, earnings or profits that had accumulated since 1913, we do not think that the provisions of section 201 (c) of the Revenue Acts of 1921 and 1924 are applicable.

This case does not appear to be an authority for the petitioner. In the case of *Hadden* v. *Commissioner*, *supra*, the corporation never had a surplus, but operating losses from its organization in 1904, in each year until April 30, 1917, at which time the net deficit was $833,862.92. The total losses between March 1, 1913, and April 30, 1917, were $329,549.22. From April 30, 1917, to December 20, 1917, by the sale of capital assets, it had a taxable profit of $405,949.07. The court held that the operating losses or carrying charges after March 1, 1913, should be deducted from the profits of December 20, 1917, before dividends declared and paid out of such taxable profits were taxable to the stockholders receiving the dividends. What the court would have held if, as in the case at bar, the corporation had had accumulated surplus and undivided profits sufficient to have absorbed all the losses before the profits by sale of the capital assets were realized, it is mere speculation to surmise; but the facts in that case are so different in material respects from those in the instant case that we do not feel impelled to follow certain of the language used by the learned judge who delivered the opinion, even though it might be broad enough to include a situation comparable to that before us.

The respondent has conceded that his computation should be revised to show that the dividend paid by the West Side Lumber Company on April 14, 1923, was 22.75 per cent taxable instead of 28.217 per cent taxable, but insists upon the application in the instant cases of the principle adopted and maintained for many years by the Bureau of Internal Revenue and set forth in G. C. M. 3532, C. B. VII–1, p. 190, which position we think correct and we so expressed ourselves in *Louise Glassell Shorb*, 22 B. T. A. 644, 645, in which

case the Commissioner had taken an opposite view. We are of the opinion that the principle so approved is also sustained in *Blair* v. *United States*, 63 Ct. Cls. 193; certiorari denied, 275 U. S. 546.

We are of the opinion that the deficiencies proposed should be recomputed on the basis of corrected facts and in accordance with the application of the principle contended for by the respondent, which we hold to be correct.

Reviewed by the Board.

> *Judgment will be entered in each case under Rule 50.*

---

TRAMMELL, dissenting: It seems to me too clear for controversy that any surplus existing at February 28, 1913, has no connection whatever with what the accumulated surplus since that date is. What the majority opinion holds might be illustrated as follows: If a taxpayer had an earned surplus of $10,000 on February 28, 1913, and subsequent to that date had earnings in some years and losses in others, and at the end of 1920 the total losses since February 28, 1913, equaled its total earnings since that date, with the result that at that time there were no earnings in fact *accumulated* since 1913, a distribution at the close of 1920 would be held to be out of the earnings or profits accumulated since February 28, 1913. In other words, the losses since February 28, 1913, are applied against the surplus existing on that date. Yet in the illustration given it is perfectly plain that the only surplus to be distributed was that existing on February 28, 1913. This, in my opinion, results in taxing the surplus existing on February 28, 1913, when distributed in dividends, contrary to the statute. In my opinion there can be no accumulated surplus since February 28, 1913, unless the earnings since that date exceed the losses since that date. These are the only factors to be considered. I see no occasion to apply losses since 1913 to surplus at that time in order to ascertain the accumulated earnings since February 28, 1913. This is quite different from the principle of determining earned surplus for invested capital purposes, where there is no requirement to determine accumulated surplus since a certain date, but only the question as to the total earned surplus existing in the taxable year or on hand when that year began. See *Willcuts* v. *Milton Dairy Co.*, 275 U. S. 215. I believe the statute should be construed according to its plain language, that is, the distribution to be taxable must be out of earnings or profits *accumulated since* February 28, 1913, and that such amount should not be affected in any way by any surplus existing at that time.

488

The losses since February 28, 1913, should be taken from the profits since that date to determine the accumulated profits *since* that date.

I do not think the *Shorb* case in 22 B. T. A. 644, is authority for the majority decision. The corporation in that case was not organized until after March 1, 1913.

The prevailing opinion also relies on the case of *Blair* v. *United States*, 63 Ct. Cls. 193. In the case of *J. L. Washburn*, 16 B. T. A. 1091, the Board pointed out that it considered the *Blair* case to be unsound and declined to follow it.

In the case of *Hadden* v. *Commissioner*, 49 Fed. (2d) 709, the Circuit Court of Appeals for the Second Circuit, said:

> The accumulated profits since March 1, 1913, must necessarily mean the net excess of all profits between March 1, 1913, and the date of distribution, less all losses sustained between the same dates * * *.

I think this view is correct and that it is erroneous to reduce the surplus on hand on February 28, 1913, by subsequent losses to determine the earnings and profits accumulated since that date.

MORRIS, MARQUETTE, SMITH, LOVE, and McMAHON agree with this dissent.