TALBOT C. WALKER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SUSAN D. TALBOT, A. G. HARMS, WELLS FARGO BANK & UNION TRUST COMPANY, EXECUTRIX AND EXECUTORS OF ESTATE OF WILLIAM H. TALBOT, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WELLS FARGO BANK & UNION TRUST COMPANY, ADMINISTRATOR WITH WILL ANNEXED, ESTATE OF FREDERICK C. TALBOT, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 20407, 20409, 20411.   Promulgated February 28, 1933.

*Hartley Peart, Esq., Anson Herrick, C. P. A.,* and *Fred H. Brown, C. P. A.,* for the petitioners.

*F. R. Shearer, Esq.,* for the respondent.

## OPINION.

LANSDON: At Docket No. 20407 the respondent asserts deficiencies in income tax against petitioner Talbot C. Walker for the years 1917, 1918, 1919 and 1920, in the respective amounts of $68.87, $30.97, $8,679.76 and $2,033.41.   At Docket No. 20409 the tax in controversy is $46,488.05, which is the unabated remainder of an original deficiency asserted against W. H. Talbot for the year 1919, in the amount of $154,663.09.   At Docket No. 20411, the tax in controversy is $22,402.98, which is the unabated remainder of an original deficiency asserted against the estate of Frederick C. Talbot for the fiscal period March 10, 1919, to December 31, 1919, in the amount of $28,499.28.   Two issues are involved: (1) Whether certain distributions made to the several petitioners in the taxable years are taxable as profits accumulated after March 1, 1913, and (2) Whether the deficiency asserted against W. H. Talbot was barred by the statute of limitations at the date of the deficiency notice.   The first issue is common to all the dockets.   The three proceedings have been consolidated for hearing.

After the issue of the deficiency notices, but prior to the hearing, William H. Talbot, executor of the estate of Frederick C. Talbot, died.   He was succeeded as such executor by the Wells Fargo Bank

& Union Trust Company, which, by motion duly made and granted, has been substituted for the original petitioner at Docket No. 20411. In like manner Susan D. Talbot, A. G. Harms and the Wells Fargo Bank & Union Trust Company, as executrix and executors of the estate of William H. Talbot, deceased, have been substituted for the original petitioner at Docket No. 20409.

The parties have filed, and the Board adopts as its findings of fact, a stipulation which covers all the facts pertinent to the issues of these proceedings and which we hereby incorporate in this report by reference.

In the proceeding at Docket No. 20409, the petitioner pleads that the statute of limitations had run at the date of the deficiency notice. The parties agree as to the following facts in relation thereto. The income tax return of William H. Talbot, the petitioner's decedent, was filed on March 15, 1920; on October 18, 1923, the Commissioner made a noncompliance assessment of the deficiency in the amount of $154,663.09, as to which an abatement claim was duly filed and which was pending at the effective dates of the Revenue Acts of 1924 and 1926; on August 26, 1926, the Commissioner mailed a letter to the petitioner in conformity with section 283 (e) of the Revenue Act of that year in which such claim was allowed for $108,175.04 and rejected for $46,488.05; on October 5, the original petition was filed with the Board of Tax Appeals. Petitioner never signed any waiver extending the period for determining, assessing or collecting the unabated portion of the noncompliance assessment nor made any bond in relation to the tax liability in controversy.

In support of his contention that the statute of limitations had run against his tax liability for 1919, the petitioner relies upon *Russell* v. *United States*, 278 U. S. 181, and on numerous decisions of this Board in conformity therewith. In the *Russell* case the court said:

Section 277, as above shown, limits suits for taxes imposed by the Act of 1918 to five years after the return, except (§ 278) in certain cases where an assessment has been made. In the excepted cases the period for suit is extended to six years after the assessment. But §278 further provides that it shall not authorize the collection of a tax after the same has been actually barred by the applicable statute, and further that it shall not affect any assessment made prior to June 2, 1924.

Unless extended by waivers or by operation of law the time in which the Commissioner could move for the collection of the deficiency here involved expired on March 15, 1925. There was no waiver, but counsel for the respondent argues at great length that "any assessment of tax for 1919, which is brought within the provisions of section 280 of the Revenue Act of 1924 by a final determination made after June 2, 1924, would be subject to the six year period

of limitation for collection provided in the 1924 and 1926 Acts ". The infirmity of this argument as to the facts of the present proceeding is so obvious that little discussion is required. If the noncompliance assessment of October 15, 1923, was not an assessment within the meaning of the law, it follows that no assessment or final determination was made prior to March 15, 1925, and that the denial of petitioner's claim for abatement in part on August 26, 1926, was after the expiration of the statutory limitation provided in the Revenue Act of 1918. The plain fact here is that an assessment was made prior to June 2, 1924, and that no further action was taken until the statute of limitations had run. At August 26, 1926, the Commissioner was without authority to move further in the collection of the deficiency here involved. *Guardian Trust Co., Executor*, 15 B. T. A. 1256; *J. F. Anderson Lumber Co.*, 15 B. T. A. 475; *George U. Hind*, 18 B. T. A. 96; *Melville W. Thompson*, 18 B. T. A. 1192; *Lillian M. Wheeler, Executrix*, 20 B. T. A. 695; *William H. Schroll*, 20 B. T. A. 1027; *Caroline J. Shaw, Executrix*, 21 B. T. A. 400. See also *Brown & Sons Lumber Co.* v. *Burnet*, 282 U. S. 283.

Counsel for respondent argues on brief that because petitioner has availed himself of the benefits of section 283 (e) of the Revenue Act of 1926, by appealing to this Board on the merits of his tax liability for 1919, he and his representatives " can not now deny the applicability of related sections of that Act ", as was held in *Brown & Sons Lumber Co.*, *supra*. There is no merit in this contention. Furthermore, the statute of limitations is an affirmative defense that may be pleaded before the Board in any proceeding for the redetermination of a deficiency asserted by the Commissioner. *National Refining Co. of Illinois*, 1 B. T. A. 236; *Warner Sugar Refining Co.*, 4 B. T. A. 5; *Ocean Accident & Guarantee Corp., Ltd.*, 6 B. T. A. 1045; *Reliance Mfg. Co.*, 7 B. T. A. 583. As to Docket No. 20409 there is no deficiency for 1919.

The stipulation discloses that at March 1, 1913, the Puget Mill Company had a surplus account of $19,535,614.79, which was made up of accumulated earnings and appreciation of assets to a fair market value at that date in the respective amounts of $2,183,090.83 and $17,352,524.26. Between February 28, 1913, and December 31, 1917, it sustained operating losses in the aggregate amount of $1,048,871.51. In the years 1918, 1919 and 1920 it realized operating profits in the respective amounts of $294,347.16, $176,584.27 and $370,880.06, a total of $841,611.49. Between February 28, 1913, and December 31, 1920, it realized appreciation accrued prior to March 1, 1913, in the aggregate amount of $5,182,477.65. In the years 1913 to 1920, inclusive, it made cash distribution to its stockholders in the respective amounts of $150,000, $150,000, $150,000,

$300,000, $62,500, $650,000, and $300,000. The several petitioners herein received cash distributions in 1918, 1919 and 1920, as set out in the stipulation, but reported no part thereof as taxable income in their returns in any of those years. Upon audit the Commissioner determined that with the exception of the distribution on December 30, 1920, all such dividends were out of earnings or profits accumulated since March 1, 1913, and asserted as surtaxes the deficiencies which are here in controversy. The petitioners contend that all the distributions in question were out of earnings or profits accumulated prior to such date and in effect and in fact were nontaxable liquidations of capital.

The nature of the problem resulting from the conflicting positions of the parties herein requires us first to determine to what extent and for what purposes the surplus of the corporation at March 1, 1913, became capital by Acts of Congress, and, second, whether the word " accumulated " contains any meaning or implication not commonly recognized which must be discovered and applied in the application of the taxing statutes here involved.

The Revenue Act enacted September 8, 1916, and all subsequent statutes imposing income taxes, expressly provide that the term " dividend " means any distribution to the stockholders of a corporation out of earnings or profits accumulated since February 28, 1913, and that any earnings or profits accumulated prior to March 1, 1913, may be distributed exempt from the tax after the earnings and profits accumulated since February 28, 1913, have been distributed.

Section 10 of the Revenue Act of 1916 provides, in part, as follows:

* * * That the term " dividend " as used in this title shall be held to mean any distribution made or ordered to be made by a corporation, joint stock company, association, or insurance company, out of its earnings or profits accrued since March first, nineteen hundred and thirteen * * *.

In the Revenue Act of 1918 Congress included in section 201 the following definition:

(a) That the term " dividend " when used in this title (except in paragraph (10) of section 234) means (1) any distribution made by a corporation, other than a personal service corporation, to its shareholders or members, whether in cash or in other property or in stock of the corporation, out of its earnings or profits accumulated since February 28, 1913, * * *

(b) * * * but any earnings or profits accumulated prior to March 1, 1913, may be distributed in stock dividends or otherwise, exempt from the tax, after the earnings or profits accumulated since March 1, 1913, have been distributed.

In the Revenue Act of 1921, Congress reenacted the above provisions and added the following in section 201 (b):

For the purpose of the Act every distribution is made out of earnings or profits, and from the most recently accumulated earnings to the extent of such earnings or profits accumulated since February 28, 1913; but any earnings or

profits accumulated or increase in value of property accrued prior to March 1, 1913, may be distributed exempt from the tax, after the earnings and profits accumulated since February 28, 1913 have been distributed * * *.

All subsequent revenue acts include substantially identical definitions and provisions and evidence that the consistent policy of Congress since September 8, 1916, has been to permit the tax-free distribution of all corporate earnings or profits accumulated prior to March 1, 1913, and that no distinction is made between earned surplus and appreciation owned at that date.

In their interpretation of the statutory provisions above set out the courts have consistently held that for tax purposes Congress intended that all property owned by corporations at March 1, 1913, must be regarded as capital when distributed to stockholders. In *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330, decided June 3, 1918, which was a case involving the taxability of a dividend paid out of surplus earned prior to March 1, 1913, the Supreme Court, speaking through Mr. Justice Pitney said:

This being so, we are bound to consider accumulations that accrued to a corporation prior to January 1, 1913, as being capital, not income, for the purposes of the act. And we perceive no adequate ground for a distinction, in this regard, between an accumulation of surplus earnings, and the increment due to an appreciation in value of the assets of the taxpayer.

In *Lynch* v. *Turrish*, 247 U. S. 221, in affirming a judgment of the Circuit Court of Appeals, the Supreme Court said:

The timber lands were the property, capital and capital assets, of their legal and equitable owner and the enhancement of their value during a series of years " prior to the effective date of the income tax law, although divided or distributed by dividend or otherwise subsequent to that date, does not become income, gains, or profits taxable under such an act."

In *Park* v. *Gilligan*, 293 Fed. 129, the question for decision was whether a chose in action existing but of unknown value at March 1, 1913, but later determined and realized was capital at that date. In its opinion the court said:

Whatever claims the corporation had upon that date, whether arising from profit or otherwise, are to be considered as capital then accrued, for the purposes of this Act, and that profits since accrued means after acquired gain, which did not then exist, and that the mere fact that a then existing claim, even though representing a profit, was afterwards collected, would not make it a profit accrued after the prescribed date.

In *T. Irving Hadden, Executor*, 17 B. T. A. 596, and *Annie P. Kountze*, 17 B. T. A. 928, this Board was asked to decide the precise question here involved. In each case judgment was adverse to the petitioner not on the merits but because of insufficient evidence. The former proceeding was reviewed on appeal by the United States Court of Appeals for the Second Circuit. The infirmity in the

evidence having been cured by an agreement between the parties, our decision on this question was reversed and the petitioner was sustained. In its opinion, *Hadden* v. *Commissioner*, 49 Fed. (2d) 709, the court said:

Congress did not intend that a corporation should be held to accumulate profits for one tax purpose only and not for another. No earned surplus can be accumulated until the deficit or impairment of paid-in capital has been made good. Dividends paid while there is an operating deficit should be deemed to be paid from capital or paid-in surplus even though there are earnings of the taxable year sufficient to pay the dividend in whole or in part. Operating losses sustained after March 1, 1913 must be deducted from profits realized after that date before there can be a taxable profit on the sale of land and the accumulated profits since March 1, 1913 must necessarily mean the net excess of all profits between March 1, 1913 and the date of distribution, less all losses sustained between the same dates. * * *

All the authorities above cited unite in support of the petitioner's contention that, for Federal income tax purposes, all the property owned by the Puget Sound Company at March 1, 1913, was capital. To the extent that such property was made up of wasting assets used in its trade or business it was entitled to take depreciation in subsequent years based on the value at that date, entirely regardless of the cost of such assets or the state of the company's balance sheet as to surplus. *Wisconsin Nat. Bank*, 4 B. T. A. 109; *Even Realty Co.*, 1 B. T. A. 355; *Clark & Co.*, 4 B. T. A. 356. In the event of the sale of assets acquired prior to such date, the basis for determining gain is the cost or fair market value thereat, whichever is higher. *Red Wing Linseed Co.*, 5 B. T. A. 390; *Pacific Realty Corp.*, 5 B. T. A. 1223; *A. C. Fraser*, 6 B. T. A. 346; *First Nat. Bank of Ft. Dodge*, 7 B. T. A. 817. It is clear to us that if all March 1, 1913, values are capital for some tax purpose, they must be capital for all such purposes.

In the light of the authorities above cited, and of our conclusion as to the primary contention of the petitioner, little discussion of the divergent views of the parties as to the sense in which the word " accumulated " is used in the applicable statute is required. It seems clear to us that the respondent proposes to read into the law a meaning that is not indicated by the language. Apparently it is his contention that accumulation can be accomplished without regard to losses and in effect he argues that for purposes of the income tax only the time after losses have ceased and profits are being realized should be considered. The man who began business with property worth $100,000 lost $75,000 in the first two years and thereafter earned profits of $75,000 in two succeeding years, would have some difficulty in realizing that he had any accumulation of profits at the close of the four-year period. Counsel for respondent

argues that petitioners propose to insert the word " net " into the law so that it shall read the *net* profits or earnings accumulated after March 1, 1913. In our opinion no such addition to the language of the statute by interpretation or otherwise is necessary, since the words " accumulated " and " accumulation " connote a net result obtained by combining additions and subtractions over the entire period involved. In any taxable year subsequent to March 1, 1913, accumulated profits or earnings can mean only the difference between losses and gains after that date. *Hadden* v. *Commissioner, supra.*

Having reached the conclusion that for Federal tax purposes everything owned by a corporation at March 1, 1913, then became capital by operation of law, it follows that in subsequent operations an operating deficit occurs in any year in which losses are sustained in excess of surplus accumulated after March 1, 1913. Regardless of whether the earnings of any given year are sufficient to pay dividends declared in that year, such dividends must be regarded as paid out of capital to the extent that the operating deficit has not been made good from earnings. This principle was recognized by the Treasury in L. O. 942, 1 C. B. 300, which includes the following language:

Dividends paid while there is an operating deficit shall be deemed to be from capital or paid-in surplus even though there are earnings of the taxable years sufficient to pay the dividend in whole or in part.

To like effect are I.T. 2016, III–1 C. B. 29; G.C.M. 1552, VI–1 C. B. 10; G.C.M. 3522, VII–1 C. B. 190; G.C.M. 3532, VII–1 C. B. 190. This Board has also often ruled that a dividend distributed prior to the time that an operating deficit is made good is a return of capital and that in computing invested capital the paid-in capital is to be reduced by the amount of such dividends. *Crystal Ice Co.*, 14 B.T.A. 682; *J. L. Washburn*, 16 B.T.A. 1091; *Lillian G. Shorb*, 22 B.T.A. 644; cf. *Frank D. Darrow*, 8 B.T.A. 276.

Any argument on the theory that the petitioner's contention violates the principle that taxes are imposed and tax liability computed on an annual basis is wholly inconsistent with the facts. In truth the determination of the respondent is much more clearly and definitely a violation of such principle. That Congress has the power to tax distributions from surplus in existence at March 1, 1913, and that this power was exercised under the Revenue Act of 1913, is well established. *Lynch* v. *Hornsby*, 247 U. S. 339. Later, however, in the Revenue Act of 1916, that power was abandoned and legislation was enacted which defined dividends as distributions of earnings or profits accumulated since March 1, 1913, and in effect, for Federal tax purposes, classified all property owned at March 1, 1913, as capital. This change was to correct the very defect which the respondent here alleges exists in the conten-

tion of the petitioner. To permit the taxation of distributions of surplus existing at March 1, 1913, in subsequent years, would be retroactive legislation and would determine tax liability for any given year not alone on income realized in that year, but also upon receipts from distributions of capital owned at March 1, 1913, which would be an obvious violation of the sound and equitable principle that whenever possible distributions should be taxed at the rates in effect at the time of their accumulation.

In considering the exemptions here in question it must not be overlooked that prior to March 1, 1913, Federal imposts on corporations were slight and distributions to stockholders were subject to very low tax rates. At September 8, 1916, war was imminent and, at the effective date of the Act of 1918, our country was engaged in a great conflict at costs that could be met only in part by the imposition of high and unwelcome taxes. The current rates during the taxable years now under review were so high that it was only fair that Congress should provide for their payment on and out of current incomes which were largely produced by war activities. To have done otherwise would have worked a virtual sequestration of property that had been accumulated when the country was at peace and taxes were low.

It is equally inconsistent to argue that our conclusion herein results in inequitable advantages to taxpayers who acquired corporate stock after March 1, 1913, and thereby succeeded to the right to receive distributions free from tax in the circumstances herein. The purchaser of corporation stock succeeds to all rights theretofore enjoyed and owned by the seller. If stock sold after March 1, 1913, represents values in existence at that date which are subject to subsequent distribution exempt from tax, it must be presumed that the transfer price covered such values and privilege and that the purchaser profits no more from the exemption than would the original owner. In fact, his actual advantage may be much less, since his investment covers the entire value at March 1, 1913, much of which may have been profit or appreciation in the hands of the original owner. In any event, equitable considerations can not be regarded as controlling in our treatment of tax problems. We are required to base all our decisions upon the laws as enacted by Congress and interpreted by the courts. Congress has not distinguished between the stockholders of a corporation prior and subsequent to March 1, 1913. If this was neglect, and is serious, which is doubtful, it must be corrected by legislation.

Between February 28, 1913, and December 31, 1917, the Puget Mill Company sustained operating losses in the aggregate amount of $1,048,871.57. In the years 1918, 1919 and 1920 it realized $841,611.49 as operating profits, which, neither in the aggregate nor in any one of the years in which the distributions were made, was suffi-

cient to replace the impairment sustained between February 28, 1913, and December 31, 1917. It follows, therefore, that none of the distributions here involved were made from earnings accumulated after March 1, 1913. The determination of the respondent proposes to tax earnings and profits accumulated before such date, and in our opinion is contrary to the plain intention of Congress as reflected in the applicable statute.

Since this report was prepared our decision in *Charles J. Canfield*, 24 B. T. A. 480, relied on by the respondent, has been reversed by the Circuit Court of Appeals for the Seventh Circuit, 62 Fed. (2d) 751.

Reviewed by the Board.

*Decision will be entered under Rule 50.*